STATE of Iowa, Appellee,

v.

Ronald Wayne BREWER, Appellant.

No. 58913.

Supreme Court of Iowa.

Nov. 17, 1976.

Rehearing Denied Jan. 14, 1977.

Thomas M. Horan, Marion, and Timothy S. White, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Joseph S. Beck, Jim P. Robbins and Thomas Mann, Jr., Asst. Attys. Gen., and Stephen E. Locher, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

HARRIS, Justice.

Defendant was charged, tried and convicted of first-degree murder in violation of § 690.2, The Code, and thereafter brought this appeal in which he raises nine assignments of error. We find all nine assignments to be without merit and affirm the trial court.

Taking the evidence in the light most consistent with the verdict the following facts appear. At about 5:30 p. m. on January 29, 1975 Herbert Pennock, a guard at the men's reformatory in Anamosa, picked up the defendant Ronald Brewer (Brewer) at the reformatory. Brewer was given permission to leave the reformatory in order to teach a night class at the Anamosa high school. Pennock was to provide transportation. Two days earlier Pennock had purchased a rifle and ammunition at Brewer's request. According to Pennock Brewer told him he needed the rifle and the ammunition in order to escape with Mrs. Clarence Edwards. Mrs. Edwards, a resident of Anamosa, was employed at the reformatory and was known to Brewer. Brewer told Pennock he needed the rifle to ward off Mr. Edwards.

Pennock gave the rifle to Brewer and, after class equipment was unloaded at the high school, drove him to the home of Mr. and Mrs. Edwards. Pennock thereupon returned to the high school. Brewer appeared at the high school a short time later and told Pennock he had shot the Edwards. Thereafter Pennock took Brewer to Dubuque where Brewer was picked up by someone else. Pennock then phoned authorities and stated he had been kidnapped.

On January 30, 1975 Greg Holub, Mrs. Edwards' son, went to the Edwards home at about 7:00 a. m. He found both the Edwards shot to death. The authorities were notified and Brewer was subsequently captured. In this prosecution Brewer was tried for the murder of Clarence Edwards.

Other facts can be more appropriately recited in connection with the specific assignments.

I. Brewer's first assignment challenges the constitutionality of Iowa's statutory scheme for designating petit jury panels. While all statutory exemptions are assailed, Brewer focuses his challenge on the provision exempting persons over 65 years of age. In Linn County, where trial was had following a change of venue, 14.43 percent of the registered voters were over 65. Brewer summarizes his challenge by arguing the systematic exclusion of persons over 65 by the jury commission " * * * following the mandatory provisions of the Iowa law violates the letter and the spirit of both the United States Constitution and

the Constitution of the State of Iowa * * *."

■ Brewer originally raised this claim by challenging the petit jury panel. He does not claim nor did he ever claim the jury commissioners in Linn County were in violation of the statute in striking the names of all persons over 65 years of age. Rather Brewer argues the statutory system itself is unconstitutional. But see *State v. Edgerton*, 100 Iowa 63, 69 N.W. 280 (1896). Brewer cites *Beyer v. City of Dubuque*, 258 Iowa 476, 139 N.W.2d 428 (1966) for the proposition that petit juries must be drawn from a representative cross section of the community. This principle falls within the general ambit of the fundamental right to a fair and impartial jury. In *State v. Knutson*, 220 N.W.2d 575, 577 (Iowa 1974) we said:

■ "A defendant in a criminal prosecution is entitled to an impartial jury. Iowa Const., Art. I, § 10; U.S.Const., Amend. VI. This clause in the Sixth Amendment to the United States Constitution applies to the states through the Fourteenth Amendment. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. If systematic and intentional exclusion of an identifiable eligible group prevents a jury from being representative of the community, a defendant is denied his right to a proper jury. *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181." See also *State v. Williams*, 243 N.W.2d 658, 662 (Iowa 1976); *State v. King*, 225 N.W.2d 337, 341–342 (Iowa 1975); *Beyer*, supra; 47 Am.Jur.2d, Jury, § 163, pp. 756–757; Wharton's Criminal Procedure, Selection of Trial Jury, § 440, p. 238.

Brewer points to three Iowa statutes which prescribe the scheme for designating petit jury panels. Section 609.1, The Code, requires the jury commission to select three lists of jurors. Section 609.2 directs the commission to omit from such lists the names of various categories of persons. The ninth category is any person "[w]ho has been exempted by law from jury service."

Section 607.2 lists seven categories of exemptions. The fifth category, the category central to Brewer's challenge, exempts "[p]ersons over sixty-five years of age." Other categories exempt various public officeholders, professional persons, educators, disabled and infirm persons, firemen, and those opposed to jury service because of their religious faith.

We agree Brewer's argument is strongest with regard to the category exempting persons over 65 years of age. There is no need to separately consider the various other statutory exemptions. If Brewer's argument is not valid with regard to people exempted by reason of being over 65 years of age it is similarly invalid as to all other categories of statutory exemption.

The question becomes whether the exclusion of persons over 65 years of age was an exclusion of an identifiable group which thereby prevented Brewer's jury from being representative of the community. *Knutson*, supra; *Williams*, supra; *King*, supra; *Beyer*, supra.

■ The states have authority to determine eligibility requirements of jurors. In *Carter v. Greene County*, 396 U.S. 320, 332, 90 S.Ct. 518, 525, 24 L.Ed.2d 549, 559 (1970) it is stated:

" * * * It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. 'Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.' (Authority)." See also *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); 50 C.J.S. Juries § 124, pp. 846–847; 47 Am.Jur.2d, Jury, §§ 163–165, pp. 756, 760. The discretion given states in prescribing relevant qualifications

for jurors has been described as broad. *Taylor,* supra, at 720, *Williams,* supra, at 662. The Iowa provision exempting persons over a specified age from jury duty seems typical:

" * * * Typical statutory provisions as to qualifications of jurors are that one must be a citizen of the United States and a resident of the county, not less than 21 years of age or more than a certain age— such as 65 or 70—in the possession of his natural faculties and not infirm or decrepit, able to read and write the English language, free from all legal exceptions, a fair character, and of approved integrity. * * *." 47 Am.Jur.2d, Jury, § 100, p. 710. See also 22 C.J.S., Juries, § 124, p. 846, § 138, p. 865; Wharton's Criminal Procedure, Selection of Trial Jury, § 443, p. 247; ABA Standards Relating to Trial by Jury, 2.1.

The United States Supreme Court expressed no criticism of such provisions in *Carter,* supra, which involved a jury selection statute containing a maximum age provision of 65. The court in *Carter* quoted with approval from *Franklin v. South Carolina,* 218 U.S. 161, 30 S.Ct. 640, 54 L.Ed.2d 980 (1909). *Franklin* also involved a statute containing a maximum age provision of 65. The quotation was as follows:

" 'We do not think there is anything in this provision of the statute having the effect to deny rights secured by the Federal Constitution. * * * There is nothing in this statute which discriminates against individuals on account of race or color or previous condition, or which subjects such persons to any other or different treatment than other electors who may be qualified to serve as jurors. The statute simply provides for an exercise of judgment in attempting to secure competent jurors of proper qualifications.' " 396 U.S. at 335, 90 S.Ct. at 526, 24 L.Ed.2d at 560.

The appropriateness of a maximum age limitation turns on whether exemption of persons over 65 is based on some reasonable classification. The reasonableness of such a classification determines the constitutionality of the provision. *Beyer,* supra, 258 Iowa at 485–486, 139 N.W.2d at 434; 47 Am. Jur.2d, Jury, § 163, p. 757.

We think the classification is reasonable. It fairly balances the right to a fair trial and the varying responsibilities of citizens for jury duty. A fair cross section of the community is left to serve. This view is supported in *King v. U. S.,* 1 Cir., 346 F.2d 123, 124 (1965):

"The * * * election commissioners * * * omitted all persons exempted from jury duty by the * * * statute. (Authority). It omitted, accordingly, persons between the ages of 21 and 25, and over the age of 70, whom the federal statute would have included. (Authority).

"The difference in viewpoint between ages 21 and 25 would not seem to us of any great significance. Nor would there seem to be any substantial effect upon the composition of a jury as a result of eliminating such persons over 70 as might be competent to stand duty. We regard it as highly speculative whether the decisional outlook of such excluded persons would be different than that of persons a mere few years older, or a few years younger. The mere fact that there might be fewer young persons on the jury, and fewer of the oldest, than the exact proportion of such persons existing in the community does not of itself make a jury nonrepresentative. (Authority). * * *."

The controlling interest is a defendant's right to a fair and impartial jury and not to any particular jury. *King,* supra; *State v. Jones,* 193 N.W.2d 509 (Iowa 1972). The State has a rational basis for its special exclusion of persons over 65. Defendant has not shown the excluded class has any special perspective not attainable from the balance of the community. His claim the jury panel was not representative of a cross section of the community is without merit.

II. Brewer's second assignment stems from his attempt to keep the jury from learning he was serving a life sentence. Prior to trial he filed what he called a motion in limine seeking to exclude all evidence concerning his status as a life-term

prisoner. The motion was probably more akin to a suppression motion than one in limine. See *State v. Feddersen*, 230 N.W.2d 510, 512 (Iowa 1975). The parties dispute whether the motion was ruled upon and, if so, whether it was sustained or overruled.

During the examination of Pennock at trial it was revealed he was testifying under a grant of immunity from charges of perjury and suffering a life prisoner to escape. Although Brewer was not identified as the specific life prisoner Pennock permitted to escape the jury easily could have made that assumption. Upon this disclosure Brewer promptly moved for a mistrial. The motion was overruled and Brewer assigns the ruling as error.

■ We can pass the questions as to the appropriateness of the trial court's ruling on Brewer's original motion. Even if we assume the trial court ruled favorably to Brewer and assume further it erred by admitting evidence Pennock suffered a life prisoner to escape it is still a separate question as to whether a mistrial should have been granted. On this subject see *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) where we said:

" 'Trial courts have considerable discretion in granting or denying motions for mistrial. (Authority). Such latitude of discretion would seem appropriate in view of a trial court's ability to gauge the impact of the subject of the motion upon the trial. The controlling question is whether prejudice is shown. (Authorities).

" * * *

"The result of these rules would require this court, in order to reverse, to determine the trial judge abused his wide discretion in denying the motion for mistrial. Stated otherwise, this court would have to find the trial judge's ruling denying mistrial was ' " * * * so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." ' (Authority).

" ' * * * Abuse of discretion is shown only when the one objecting to the ruling has displayed that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. * * * [citing authority].' "

■ In *State v. Warner*, 229 N.W.2d 776, 783 (Iowa 1975) we reviewed earlier authorities and pointed out again that only abuse of discretion and not exercise of discretion is reviewable. Ordinarily abuse can be found only where there is no support in the record for the trial court's determination. When the term discretion is invoked it presupposes the trial court has a choice to determine between competing considerations.

■ Under these tests we cannot say the trial court abused its discretion in denying a mistrial.

Brewer's second assignment is without merit.

III. In preparing for trial Brewer sought to explore Pennock's motive in testifying for the State. He argues a grant of immunity affects the credibility of a witness and that information concerning such a grant was critical to his defense. Responding to Brewer's various requests the trial court determined Brewer was entitled to relevant information concerning Pennock's motive in testifying. The trial court declined Brewer's demand Joseph Beck, the prosecutor, be required to supply this information under oath. Brewer's third assignment challenges rulings of the trial court quashing subpoenas which would have required Beck to answer questions under oath.

■ Without question Brewer was entitled to information with respect to the general subject matter of promises or assurances made to Pennock or his wife in order to secure their testimony. *State v. Peterson*, 219 N.W.2d 665 (Iowa 1974); *State v. Eads*, 166 N.W.2d 766 (Iowa 1969). But it does not follow Brewer was entitled to full freedom of choice on how such information should be obtained. See *State v. Hall*, 235 N.W.2d 702 (Iowa 1975) and *Eads*, supra,

for examples where discovery demands were deemed excessively broad. *Peterson* does not, as Brewer argues, establish the defense has a right to depose a prosecutor. Rather it stands for the proposition the defendant has a right to depose the State's witnesses. A prosecutor is not a State witness.

The trial court permitted Beck to be examined on the record and permitted Brewer to propound interrogatories to be answered by Beck. Beck was not under oath in the traditional sense. However the statements were given credibility because they were professional statements.

 A professional statement contains its own affirmation. It is a technique, used as a matter of convenience and practical necessity, to establish a record of matters peculiarly within the knowledge of an attorney. In offering a professional statement an attorney pledges the honor of his profession and his personal integrity. It has the effect of an affidavit. *Cogley v. Hy-Vee Food Stores, Inc.*, 257 Iowa 1381, 1386–1387, 137 N.W.2d 310, 313 (1965). See also *McMillan v. Osterson*, 191 Iowa 983, 183 N.W. 487 (1921). No attorney should make a professional statement lightly or without being certain of the facts which are the subject of the statement. To place an attorney under oath would not add reliability to the matters recited in a professional statement. Brewer's argument to the contrary is without merit.

The trial court went to great lengths to make certain Brewer was satisfied with the answers he received from Beck. After Brewer expressed dissatisfaction with the professional statement the trial court permitted Brewer to propound interrogatories. Brewer expressed dissatisfaction with Beck's answer to interrogatory 6 whereupon Beck was directed by the court to expand upon his answer. At the conclusion of the further explanation Brewer's counsel stated "Fine that's all I wanted." A subpoena was thereupon properly quashed.

 Brewer's later attempt at trial to call Beck as a witness was also properly denied. It was denied because of the effect of the professional statement and because calling the prosecutor as a witness is a matter within the sound discretion of the trial court. There was no abuse here. *U. S. v. Newman*, 476 F.2d 733 (3 Cir. 1973). See Annot., 54 A.L.R.3d 100, 167 (1973).

Brewer's third assignment is without merit.

IV. A State witness, Gregory Holub, on the basis of personal observation, was allowed to express his opinion as to the distance from the middle of the street to the Edwards house. He was similarly allowed to testify whether or not a person could be seen through the window by an observer standing in the middle of the street. On appeal Brewer complains Holub had not been qualified as an expert witness and claims it was error "to answer a hypothetical question over the objection of defense counsel when said questions included a conclusion of facts not supported by the evidence."

There are several difficulties with this assignment. First Brewer did not specify the same grounds in his objections at trial. Rather he specified other grounds which he does not argue on appeal. The specific grounds he now asserts were raised in a motion to strike Holub's testimony. The motion was not made until both the direct and cross examination of Holub was completed.

 To preserve specific grounds asserted by a motion to strike the motion must be timely made. *State v. King*, 225 N.W.2d 337 (Iowa 1975). To be deemed timely made the motion to strike must be made at the earliest opportunity after the ground of objection becomes apparent. *Kleve v. General Motors Corporation*, 210 N.W.2d 568, 574 (Iowa 1973). Brewer's motion to strike was not made at the earliest opportunity. No error was preserved. See *State v. Kidd*, 239 N.W.2d 860 (Iowa 1976); *State v. Janssen*, 239 N.W.2d 564 (Iowa 1976); *State v. Bean*, 239 N.W.2d 556 (Iowa 1976).

We do not suggest the questions asked Holub were in fact hypothetical questions. We believe they were not. See 23 C.J.S. Criminal Law § 883, p. 480 where a hypothetical question is defined as " * * * a combination of assumed or proved facts and circumstances, stated in such form as to constitute a coherent and specific situation or state of facts, on which the opinion of an expert is asked, by way of evidence on a trial. A hypothetical opinion is an opinion founded on information supposed to be true. * * *."

■ Neither do we intimate the opinions were improperly received over the objections posed at trial (that they were opinions and conclusions of Holub). The admission of opinion evidence, whether lay or expert, rests in the sound discretion of the trial court. *State v. Milliken*, 204 N.W.2d 594 (Iowa 1973); *State v. Mayhew*, 170 N.W.2d 608 (Iowa 1969). We reverse only for an abuse of discretion. *State v. Hummell*, 228 N.W.2d 77 (Iowa 1975). We find no abuse.

Brewer's fourth contention is without merit.

V. The witness Pennock who testified for the State under a grant of immunity previously had been convicted of manslaughter. Brewer sought to impeach Pennock by showing the facts and circumstances surrounding Pennock's manslaughter conviction. He was prevented from doing so on the basis of our holding in *State v. Martin*, 217 N.W.2d 536 (Iowa 1974). In his fifth assignment Brewer contends the policy reasons supporting *Martin* do not apply to witnesses who are not also defendants. He argues prejudice is not a concern where the witness is not also the defendant. He points to § 622.17 which provides: "A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof."

Standing alone § 622.17 might seem to authorize what Brewer suggests. However in *Martin*, supra, 217 N.W.2d at 542, we said:

"Mindful of the foregoing we now hold, for the purpose of attacking the credibility of any witness, including an accused under Code § 622.17, evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved dishonesty or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors."

■ We reaffirmed *Martin* in *State v. Miller*, 229 N.W.2d 762 (Iowa 1975). Though *Martin* and *Miller* both involved defendant witnesses the holding was not limited to them. Our holding in *Martin* clearly applies to any witness whether that witness is the accused or not.

Brewer's fifth contention lacks merit.

VI. In the instant case prosecution was for the death of Clarence Edwards, not the death of Patricia Edwards. State's Exhibit 12 was a photograph of the Edwards home in which appeared the body not of Clarence but of Patricia Edwards. The photograph tends to show Brewer may be guilty of a crime separate from the one in the present case. In *State v. Garren*, 220 N.W.2d 898, 900 (Iowa 1974) we said evidence of a separate crime is inadmissible as bearing on defendant's guilt unless it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the commission of the crime. See also *State v. Wright*, 191 N.W.2d 638 (Iowa 1971).

■ The photograph of Patricia Edwards shows the nature of her wounds and the location of her body when it was discovered.

We have said where each of two criminal acts are an inseparable part of the whole deed so that proof of one tends to prove the

other, evidence of either criminal act is admissible upon trial for the other. *Coleman v. State*, 222 N.W.2d 497, 499 (Iowa 1974). See also *State v. Johnson*, 224 N.W.2d 617 (Iowa 1974); *State v. Harper*, 222 N.W.2d 450 (Iowa 1974). Exhibit 12 is admissible on the theory it is evidence of a criminal act which is a part of a whole deed.

▪ Since the photograph was relevant the trial court was obliged to exercise its discretion and determine whether its probative value was outweighed by its prejudicial effect. *State v. Johnson*, 237 N.W.2d 819 (Iowa 1976); *State v. Johnson*, 224 N.W.2d 617 (Iowa 1974); *State v. Oppedal*, 232 N.W.2d 517 (Iowa 1975). The photograph amplified the testimony of Gregory Holub as to the scene he encountered at the Edwards home. The gruesome nature of the picture added to its possible prejudicial effect but its admissibility nevertheless turned on its relevance. *State v. Lass*, 228 N.W.2d 758 (Iowa 1975). It was within the trial court's discretion to weigh any additional prejudicial effect resulting from the gruesome nature of the exhibit against its probative value. *State v. Hummell*, 228 N.W.2d 77 (Iowa 1975). We reverse only upon a showing of abuse. *State v. Hall*, 235 N.W.2d 702 (Iowa 1975). We find no abuse and conclude Brewer's sixth contention is without merit.

▪ VII. Brewer called Mrs. Shirley Rosencrans as a witness. On voir dire by the State out of the presence of the jury Mrs. Rosencrans testified her home was broken into between 7:00 p. m. and 8:20 p. m. on the night in question. Her home was located a block and one half from the Edwards home. The trial court sustained the State's objection that the evidence was immaterial, irrelevant, incompetent, remote, of no probative value, and not connected in the record with anything regarding the events which were subject to the trial.

Brewer argues he should have been allowed to bring out all events which occurred in the general area of the crime and near the time of the crime. He contends Mrs. Rosencrans's testimony would have established a reasonable hypothesis of his innocence which the State would have been required to explain away. He believes his right to present a defense was infringed because he was denied compulsory process and due process.

Compulsory process is not involved. There was no refusal to subpoena Mrs. Rosencrans in behalf of the defense. She was available and did in fact testify in voir dire.

Turning to the propriety of the ruling excluding Mrs. Rosencrans's testimony we note admissibility of this evidence is within the discretion of the trial court. *State v. Harper*, 222 N.W.2d 450 (Iowa 1974); *State v. Thomas*, 222 N.W.2d 488 (Iowa 1974). We reverse only upon a showing of clear abuse. *Thomas*, supra; *State v. Lunsford*, 204 N.W.2d 613 (Iowa 1973). While we believe the trial court might well have exercised its discretion to admit the testimony we find no abuse. See *State v. Blackwell*, supra, 238 N.W.2d at 138. There was no abuse of discretion and no reversible error.

Brewer's seventh contention is without merit.

VIII. In his eighth assignment Brewer claims the prosecutor was guilty of misconduct during his closing argument. In this assignment Brewer makes four specific complaints. They will be listed and discussed separately and then as to their cumulative effect.

First, it is complained the State commented on Brewer's failure to testify. Two separate remarks from the argument are cited:

▪ (a) At Brewer's request the trial court tendered the standard instruction regarding a defendant choosing not to testify. In argument prosecutor Beck stated: " * * [Y]ou will be instructed that not only is the Defendant presumed to be innocent, he has also his constitutional right not to testify, and you cannot take that to mean anything. You can't hold that against him. That's the law, * * *." Brewer made no objection. Defense counsel interrupted Beck and approached the bench. An off the record discussion was held. But no objection appears on the record.

(b) At a later point in his argument, the prosecutor stated: "* * * I think from all the evidence, collaboration, and so forth, you know, I don't like Mr. Pennock. I don't like what he did, I don't like anything about it, but at least he testified as to what the facts and circumstances were. He testified to that and you had an opportunity to hear him testify." At this time defense counsel made no objection. The failure to object may have been by arrangement with the trial court. The trial court gave Brewer an opportunity to make his record at the end of closing arguments.

After arguments Brewer listed three objections. He did not mention Beck's comments on Brewer's failure to testify. At the same time Brewer made his record he moved for mistrial based on the three objections he had regarding Beck's closing argument. Again no mention was made concerning comments on Brewer's failure to testify. Brewer did include Beck's comments on Brewer's failure to testify when he later made a motion for new trial. However that inclusion fails to preserve error. *State v. Emery*, 230 N.W.2d 521 (Iowa 1975). See also *State v. Smith*, 228 N.W.2d 111 (Iowa 1975); *State v. Dahlstrom*, 224 N.W.2d 443 (Iowa 1974). Error was not preserved on any prosecution comment on Brewer's failure to testify.

Second, Brewer argues the prosecutor was guilty of misconduct in expressing a personal opinion of Brewer's guilt. Brewer summarizes these references as follows: "Throughout his argument to the jury the prosecutor repeatedly referred to the defendant as the man who killed the Edwards, and the man who was in control of the evidence." In at least one incident the trial court sustained Brewer's objection. But the comments were not similar to the one made in *State v. Monroe*, 236 N.W.2d 24 (Iowa 1975). The statements by the prosecutor in the instant case do not imply any personal knowledge of the facts. It is not even clear the prosecutor intended to inject his personal beliefs as to what the evidence showed.

In closing arguments counsel are entitled some latitude to analyze evidence admitted at trial. *State v. Phillips*, 226 N.W.2d 16 (Iowa 1975). We believe the arguments properly fell within that latitude.

Third, Brewer points to the prosecutor's comment regarding rights of appeal. The prosecutor said: "You know, this is not the end of the process for the defendant by any means. We are all familiar with the appellate courts." At this point Brewer objected. The trial court sustained the objection and admonished the jury:

"* * * [Y]ou should not consider your determination in this case merely to be the first step in a multi-step process. You should consider it to be the final determination of guilt or innocence and act accordingly, and give no consideration whatsoever to the fact that the defendant may or may not subsequently appeal because it is your primary responsibility to finally determine the questions of fact which have been submitted to you. * * *."

Any error arising from the comment was thereby sufficiently cured. *State v. Warren*, 212 N.W.2d 509 (Iowa 1973).

Fourth, Brewer challenges the prosecutor's reference to the victims, their relatives, and friends. Such comments may be error. See *Hall*, supra. However, in the instant case the references appear to have been provoked by defense counsel's closing argument. Defense counsel suggested the jurors must look into a mirror each day if they found Brewer guilty. The argument was elaborated. In responding on rebuttal the prosecutor argued if the jurors looked into a mirror they should see the victims and their relatives and friends. He also elaborated.

Where remarks in the prosecutor's closing argument were provoked by remarks in defense counsel's closing argument grounds for reversal can be destroyed. *Hall*, supra; *State v. Moreland*, 201 N.W.2d 713 (Iowa 1972); *State v. Horsey*, 180 N.W.2d 459 (Iowa 1970); *State v. Sage*, 162 N.W.2d 502 (Iowa 1968). Although we do

216

not approve the argument it is not reversible because it was provoked.

There remains the question of whether all four of Brewer's contentions, considered collectively, constitute reversible error. In view of the broad discretion accorded trial courts in ruling on motions for mistrial, the failure to preserve error as to the first argument, the prosecutor's latitude on the second argument, the prompt admonition on the third argument, and the provocation by defendant on the fourth argument, reversible error does not exist.

IX. Brewer's final assignment is a claim the trial court erred in not granting a mistrial on grounds of prosecutorial misconduct and lack of definitive rulings by the trial court. The contention is a recapitulation of arguments previously advanced in connection with other assignments. Further review is unnecessary. The trial court did not abuse its discretion in denying a mistrial.

Brewer received a fair trial before an impartial jury. He was vigorously defended by experienced counsel. None of his contentions, considered alone or collectively, merit reversal.

AFFIRMED.