# IN THE SUPREME COURT OF IOWA

No. 19–1561

Submitted March 23, 2021—Filed May 7, 2021

**STATE OF IOWA,**

Appellee,

vs.

**WILLIAM FRANK FETNER,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

Defendant alleging the district court relied on improper sentencing factors seeks further review of court of appeals decision affirming his sentence. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.**

Christensen, C.J., delivered the opinion of the court, in which Appel, McDonald, Oxley, and McDermott, JJ., joined. Mansfield, J., filed a dissenting opinion in which Waterman, J., joined.

Richard Hollis, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas E. Bakke, Assistant Attorney General, and Carlyle D. Dalen, County Attorney, for appellee.

**CHRISTENSEN, Chief Justice.**

During sentencing, the defendant's counsel informed the district court that defendant was "not very consistent with taking his medications so the marijuana [the defendant] was using seems like basically a way to self-medicate for the anxiety that [the defendant] feels." In arguing for a suspended sentence, the defendant's counsel also told the district court that the defendant and his significant other were "running a day care center" where the defendant "helps where he can there in an effort to keep the expenses down for their home but also to provide for the family." The district court subsequently sentenced the defendant to consecutive prison terms, explaining, in part, it was "terrified [the defendant was] helping in a day care" and "[i]t's not safe for you to be caring for children if you're under the influence."

The defendant appealed, arguing the district court improperly speculated that he was under the influence while working at the day care in determining his sentence. The court of appeals affirmed the defendant's sentence. On our review, we vacate the defendant's sentence and remand for resentencing because the record did not support the district court's speculation that the defendant was working at the day care while under the influence of marijuana.

## I. Background Facts and Proceedings.

On March 6, 2019, Mason City police officers Corby Friederich and David Studer were driving an unmarked vehicle when they observed William Fetner driving a red Ford Escape. The officers confirmed through dispatch that Fetner was barred from driving in Iowa and proceeded to follow Fetner. Fetner pulled over and got out of the vehicle, so the police stopped Fetner and arrested him. The police did not locate anything illegal upon their search incident to arrest.

Almost a month later on April 5 at around 8:00 p.m., Officer Nathan Sneider responded to the report of a traffic collision at a Mason City intersection. Upon arrival, Officer Sneider observed a male in a blue car and three people in or around a white Ford Explorer—Fetner and another male were near the explorer and a juvenile female was inside the Explorer. Fetner told Officer Sneider he had just been "jumped" at McDonald's and the traffic collision occurred as he was trying to leave.

Around that time, Lieutenant Dana Knutson arrived to assist Officer Sneider, so Officer Sneider went to check on the juvenile passenger still inside the Explorer. In doing so, Officer Sneider observed marijuana in the vehicle and underneath the juvenile passenger. Lieutenant Knutson pointed out an upside down Frisbee that appeared to be functioning as a sorting tray. The officers also observed a bag belonging to Fetner that contained medical paperwork bearing Fetner's name, a wooden box with drug paraphernalia inside, and marijuana. They also located a glass marijuana pipe on the rear floorboards. Fetner informed the officers that all drugs and paraphernalia in the Explorer belonged to him and named every item individually.

Officer Sneider placed Fetner under arrest and read Fetner his *Miranda* warning. While Officer Sneider transported Fetner to jail, Fetner continued to make incriminating statements about his possession of marijuana. For instance, Fetner told Officer Sneider "that he always has marijuana" and "reiterated several times that he was about to smoke some marijuana before [the police] arrived." As a result of the March 6 and April 5 events, Fetner pled guilty to possession of a controlled substance, third or subsequent offense, in violation of Iowa Code sections 124.401(5) and 124.204(4)(*m*) (2018) and driving while barred, in violation of section 321.561. Fetner's possession charge was enhanced to an aggravated

misdemeanor due to his prior drug-related convictions. The record shows he has six prior marijuana convictions and has previously been imprisoned on drug charges.

On September 16, the district court accepted Fetner's guilty pleas and proceeded to conduct a sentencing hearing. With Fetner's consent, the district court relied on Fetner's written pleas of guilty and the minutes of testimony to accept his plea. At the hearing, the State requested "an indeterminate term not to exceed two years on each one of those" charges with "the prison terms [to] run consecutive" based on Fetner's criminal history. Fetner's counsel advocated for a suspended sentence, explaining,

> Your Honor, basically he's terrified to go back to prison. It was a pretty traumatic experience for him. As Mr. Dalen indicated and Mr. Fetner told you, he's just 31 today, and there's no doubt that he needs structure and supervision . . . .
>
> One of the issues he does have is the anxiety. He's, I guess, not very consistent with taking his medications so the marijuana seems like basically a way to self-medicate for the anxiety that he feels. He, Your Honor, does have a son, who is in court here today. He hasn't seen him for the time period of his incarceration. He does live now in Manly. He has a home there with a significant other and the two of them, along with, I believe, a third person, are running a day care center and so he helps where he can there in an effort to keep the expenses down for their home but also to provide for the family, and Your Honor, he does have the ability to be successful on probation . . . .

After Fetner's counsel finished speaking, the district court told Fetner he had "the right of allocution, which is your opportunity to tell me anything else you'd like me to consider before I decide what your sentences should be" and asked Fetner, "Is there anything you want me to know?" Fetner responded, "No, ma'am."

The district court sentenced Fetner to consecutive sentences of incarceration not to exceed two years for both charges. It provided the following explanation for its sentence during the hearing:

Mr. Fetner, at the time of sentencing I'm required to impose a sentence that I feel is appropriate to meet your needs for rehabilitation and also to do what's necessary to protect the community from any further offenses by you or by others. There's a number of things that factor into that: Your age, your prior criminal history, your employment and family and personal circumstances that I've been made aware of, the nature of the charge, the recommendation of the parties, and anything else that I've learned about you throughout the proceeding.

Mr. Fetner, certainly any time I have a defendant here who's, you know, in on a second or third or in your case, you know, someone who's charged six time[s] for the same offense, it's clear that whatever we've done in the past has not been sufficient to rehabilitate you, and there's obviously a finite number of options we have for sentencing, you know, and those range from what your attorney is asking for, which is a suspended sentence and placement in the community, you know, with some support services from probation, you know, and range up to, you know, prison, which is what the state is recommending.

When I look at all these factors, Mr. Fetner, there's a number of concerns. Obviously the main one being the continuation of these same types of offenses over and over again. You know, despite that, you've got a wide variety of things in your criminal history, not just the drug offenses but OWI's, you know, and a number of driving offenses but also harassment, theft, assault, absence from custody, and, you know, for a person your age, you've amassed an unfortunately long criminal history. That's only one of the factors that I look at, but it's clear that, you know, you are persistent in your use of an illegal substance. I am terrified you've been helping in a day care. I would think that if the parents knew your history, they would definitely pull their children out of, you know, any day care. It's not safe for you to be caring for children if you're under the influence. I totally understand that, you know, as you sit here today, that you are worried about returning to prison. The only way to make sure that you don't go back there is to stop breaking the law and that's a lesson that you have not learned yet. On each of these charges, I'm going to impose an indeterminate prison term not to exceed two years. For the reasons stated, those sentences are not suspended and they are ordered to be served consecutively.

Fetner filed a timely appeal, arguing the district court considered an "impermissible" and "irrelevant" factor when it "considered unproven allegations that Fetner worked in a daycare center and speculation that

Fetner did so while under the influence of a controlled substance" in reaching its sentencing decision. We transferred the case to the court of appeals, which concluded "the district court did not consider an impermissible or irrelevant factor in incorporating those representations" because Fetner's attorney raised those facts in seeking mitigation of Fetner's sentence and Fetner acquiesced to them. Fetner applied for further review, and we granted his application.

## II. Standard of Review.

We review a sentence imposed in a criminal case for correction of errors at law. *State v. Damme,* 944 N.W.2d 98, 103 (Iowa 2020). "We afford sentencing judges a significant amount of latitude because of the 'discretionary nature of judging and the source of the respect afforded by the appellate process.' " *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021) (quoting *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002)). When the sentencing decision falls within the statutory limits, it "is cloaked with a strong presumption in its favor." *Id.* (quoting *Formaro*, 638 N.W.2d at 724). Nevertheless, resentencing of the defendant is necessary if the sentencing court used an improper consideration, "even if it was merely a 'secondary consideration.' " *Id.* (quoting *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (en banc)).

## III. Analysis.

Fetner maintains he is entitled to resentencing because the district court violated his due process and equal protection rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 1 and article I, section 9 of the Iowa Constitution by considering "an impermissible sentencing factor not established by any allegation in the record when sentencing Fetner." To the extent Fetner is raising a constitutional claim, he failed to preserve it and we will not address it on

appeal. *See State v. Gordon*, 921 N.W.2d 19, 23 (Iowa 2018) ("Gordon is not claiming his sentence is intrinsically unconstitutional. If this were the case, he would not need to preserve error for us to decide the issue on appeal. Rather, his claim is that the use of the risk assessment tools violates his due process rights. There are distinctions between claiming the sentence is intrinsically unconstitutional and claiming errors in the proceedings prior to imposition of sentence . . . . Because Gordon's claim does not involve the inherent power of the court to sentence him for his crime, the normal rules of error preservation apply." (citations omitted)). However, Fetner's briefing does not provide a constitutional analysis of his claims and seems to actually be arguing the district court considered an unproven or improper sentencing factor. Thus, Fetner's argument "is simply [an issue] of the sufficiency of the record to establish the matters relied on," which Fetner did not need to preserve. *Grandberry*, 619 N.W.2d at 401; *see also Gordon*, 921 N.W.2d at 23. Therefore, we will address Fetner's claim that the district court considered an improper sentencing error.

Fetner contends the district court should not have accepted "the allegation that [he] worked at a daycare center while under the influence of a controlled substance," claiming nothing in the record supported the district court's conclusion that Fetner worked at a day care.[1] Fetner later walked back his claim somewhat in his reply brief, acknowledging there was indeed support in the record that Fetner worked in a day care center

---

[1]In addition to challenging Fetner's claims on the merits, the State asks us to dismiss Fetner's appeal under Iowa Code section 814.6, which establishes there is no right of appeal from a guilty plea unless the defendant establishes "good cause." Iowa Code § 814.6(1)(*a*)(3) (2019). We decided *Damme* after the parties submitted their briefs in this case. In *Damme*, we held the good-cause requirement is satisfied "when the defendant challenges his or her sentence rather than the guilty plea." 944 N.W.2d at 105. That requirement is met under Fetner's challenge to his sentence in this case, so section 814.6 does not bar Fetner's appeal.

based on the comments his counsel made at sentencing. Nevertheless, Fetner still claims the district court should not have considered it because "[t]here was no sworn testimony of any sort regarding this point, nor is there any evidence that this brief statement by counsel was intended to be a professional statement." According to Fetner, the admissions from Fetner's counsel at sentencing about his employment at a day care and marijuana use were not binding admissions on Fetner and thus improper sentencing factors.

We have previously explained that a sentencing court cannot consider unproven or unprosecuted offenses in fashioning a defendant's sentence unless the defendant admits them or facts are presented to prove them. *Gordon*, 921 N.W.2d at 25. Here, Fetner's counsel told the sentencing court both that Fetner was using marijuana "to self-medicate for the anxiety he feels" and that Fetner was "running a day care center" with his significant other and a third person where he helped when he could "to keep the expenses down for their home but also to provide for the family." When the district court asked Fetner if he had anything to add after these statements, Fetner said he did not. This amounted to an admission by acquiescence to the facts Fetner now contests, and the district court was within its authority to rely on those facts in crafting Fetner's sentence.

Fetner claims that "[t]here was no sworn testimony of any sort" about Fetner's work at the day care and that "there [is not] any evidence that this brief statement by counsel was intended to be a professional statement." Quoting *State v. Howell*, 290 N.W.2d 355, 359 (Iowa 1980), Fetner asserts that counsel was required to make a "distinct and formal" admission "for the express purpose of dispensing with formal proof of a fact." However, Fetner misconstrues this language from *Howell*, which

dealt with whether an attorney's admissions were admissible against his client on cross-examination during trial. *Id.* "The standard of proof during the sentencing stage is lower than the standard used during trial." *Grandberry*, 619 N.W.2d at 401. In the sentencing context, Fetner's acquiescence to the statements of his counsel at sentencing was all that was required for the statements to constitute an admission.

While a professional statement is not required at sentencing in the technical sense, counsel's statements on the record at sentencing are akin to a professional statement. A professional statement is simply "used as a matter of convenience and practical necessity[] to establish a record of matters peculiarly within the knowledge of an attorney," and attorneys offering such a statement "pledge[] the honor of [their] profession and [their] personal integrity." *State v. Brewer*, 247 N.W.2d 205, 212 (Iowa 1976). Professional statements have "the effect of an affidavit." *Id.* As we have stressed in the past, "No attorney should make a professional statement lightly or without being certain of the facts which are the subject of the statement." *Id.* Nothing in the record suggests Fetner's counsel was not acting accordingly.

We approved a similar admission as a sentencing consideration in *State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) (per curiam). There, we concluded the district court properly considered a presentence investigation report containing statements the defendant made to an investigator about the defendant's participation in the sale of cocaine. *Id.* Although the charges against the defendant stemming from this sale of cocaine were subsequently dropped, we explained the district court could consider the defendant's statements to the investigator about his participation in the sale as an admission to the offense because the defendant never made any material corrections to the report when it was

presented to him. *Id.*; *see also Grandberry*, 619 N.W.2d at 402 (holding the district court could consider data in the presentence investigation report obtained from other sources during sentencing when the accused does not contest that data); *Gordon*, 921 N.W.2d at 25 (holding the district court did not abuse its discretion in relying on information contained in the presentence investigation concerning the defendant's arrest and drug possession charge or the circumstances surrounding his arrest in the company of a missing juvenile female because the defendant never challenged the information).

Likewise, if counsel's statements about Fetner's use of marijuana to self-medicate for his anxiety and his employment at a day care were incorrect, Fetner could have corrected them when he had the opportunity at his sentencing hearing. Instead, he indicated he had nothing to add to his counsel's statements when the district court asked him. Consequently, the district court's consideration of Fetner's employment at a day care and his use of marijuana to self-medicate as separate sentencing factors was not improper.

With that said, it was improper for the district court to speculate that Fetner was under the influence while he was working at the day care based on the information presented at sentencing. Arguably, the district court was discussing Fetner's lengthy criminal history in general when it stated, "I am terrified you've been helping in a day care. I would think if the parents knew your history, they would definitely pull their children out of, you know, any daycare." But the full context suggests the district court had concluded Fetner worked at the day care under the influence of marijuana and considered that in sentencing Fetner. Specifically, the district court followed its statement about parents pulling their children

from the day care by declaring, "It's not safe for you to be caring for children if you're under the influence."

While one could infer Fetner was under the influence at work based on separate admissions to using marijuana to treat his anxiety and to working at a day care center, in addition to his lengthy record of drug convictions, the district court was not presented with any evidence to actually prove Fetner was under the influence at work. The record does not explain how often Fetner worked at the day care, what his hours were like, how often he used marijuana, or when he smoked marijuana. Further, although Fetner told Officer Sneider "that he always has marijuana" as he was being transported to jail, the record itself contradicts the notion that Fetner always had marijuana with him. Thus, the district court could not so much as conclude Fetner possessed marijuana around the day care children. Notably, the police found nothing illegal—including marijuana—in their search of Fetner's vehicle incident to arrest just a month before Fetner's arrest for possession in this case.

Ultimately, nothing Fetner or his counsel said ever connected the dots between his marijuana use and employment that would result in an admission that he was under the influence at work, nor do the facts before the court show Fetner was caring for children at the day care center while he was under the influence. *See Gordon,* 921 N.W.2d at 25 ("A court may not consider an unproven or unprosecuted offense when sentencing a defendant unless (1) the facts before the court show the accused committed the offense, or (2) the defendant admits it." (quoting *State v. Witham,* 583 N.W.2d 677, 678 (Iowa 1998) (per curiam)). An admission to using marijuana is not an admission to being under the influence at work. The district court's speculation about Fetner working under the influence was improper based on the information it had before it. "[W]e cannot

speculate about the weight [the district] court mentally assigned this factor, or whether it tipped the scales to imprisonment." *State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981).  Therefore, we must remand Fetner's case to the district court for resentencing without consideration of this improper factor.

### IV.  Conclusion.

We vacate the decision of the court of appeals and Fetner's sentence and remand to the district court for resentencing.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.**

Appel, McDonald, Oxley, and McDermott, JJ., join this opinion. Mansfield, J., files a dissenting opinion in which Waterman, J., joins.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. Iowa Rule of Criminal Procedure 6.23(3)(*d*) requires the district court to "state on the record the reason for selecting the particular sentence." Iowa R. Crim. P. 6.23(3)(*d*). This rule defines the district court's duty—and gives it an opportunity—to address the defendant personally and explain why it is choosing a particular sentence.

The pronouncement of sentence is intended to make an impression on the defendant. Often I believe it does. So while it is important that judges exercise sentencing discretion properly, appellate courts should not intervene over matters of word choice that do not amount to an abuse of sentencing discretion. It would be a loss for our justice system if district courts *stopped* speaking directly to defendants and, instead, mechanically recited statutory sentencing factors for fear of doing anything that might get themselves reversed.

Here, I do not think the district court crossed the line. The court drew permissible inferences from the record and considered proper sentencing factors.

William Fetner is thirty-one years old. According to his affidavits for appointment of counsel, he was making $0 at the time of his arrests and had earned $0 over the past twelve months. In May 2009, July 2010, April 2012, March 2014, and September 2014, Fetner received convictions or deferred judgments for possession of marijuana. He also had convictions in June 2009 (harassment by communication), September 2010 (driving while license denied or revoked), July 2010 (operating while intoxicated), November 2011 (theft fifth degree), April 2012 (possession of drug paraphernalia and operating while intoxicated second offense), March 2013 (theft fifth degree), July 2013 (theft fifth degree), August 2013 (theft

fifth degree), October 2013 (theft fifth degree), March 2014 (driving while barred as a habitual offender), December 2015 (voluntary absence from custody and assault), and November 2018 (driving while barred as a habitual offender). In 2014, an accumulation of criminal charges, including a conviction for possession of marijuana with intent to deliver, led to Fetner's being sent to prison. Twice, Fetner was put on work release, only to have the work release revoked resulting in his return to prison. In June 2018, Fetner discharged his sentence.

Fetner's current charges for driving while barred and possession of marijuana, third or subsequent offense, stem from events in March and April 2019. Fetner was arrested for the marijuana charges when he, another man, and a juvenile girl were found at the scene of a vehicle collision with marijuana in several different containers in their vehicle. Fetner admitted on the way to jail that "he always has marijuana," that he "was about to smoke marijuana," and that he "had marijuana with him." Fetner posted bail but did not appear for a pretrial conference, and an arrest warrant had to be issued. In September 2019, Fetner pled guilty to both charges. The following month, he appeared at sentencing, where his attorney made a plea that he not be sent back to prison for the following reasons:

> [I]t is correct in what [the county attorney] said, he has been ordered to prison for a Possession With Intent to Deliver Marijuana and that was in 2014, a conviction. *Your Honor, basically he's terrified to go back to prison.* It was a pretty traumatic experience for him. As [the county attorney] indicated and Mr. Fetner told you, he's just 31 today, and there's no doubt that he needs structure and supervision, Your Honor, and we would be asking that the term of -- in the Possession of Marijuana Charge, that the term not to exceed two years, that that be suspended and he be placed on probation.
>
> One of the issues he does have is the anxiety. He's, I guess, not very consistent with taking his medications so *the*

*marijuana seems like basically a way to self-medicate for the anxiety that he feels.* He, Your Honor, does have a son, who is in court here today. . . . *He has a home there with a significant other and the two of them, along with, I believe, a third person, are running a day care center and so he helps where he can there in an effort to keep the expenses down for their home but also to provide for the family,* and, Your Honor, he does have the ability to be successful on probation, and it does swing on the idea that *he has to eliminate all of the negative things that are in his life, including individuals who smoke marijuana, who use marijuana that he was caught with in this particular case,* and that does not alleviate him of any responsibility, but he definitely -- his life is, you know, headed down the wrong way and we'd like to have that opportunity for him on his -- on the possession with marijuana, the third or subsequent offense, that that be suspended with the two years['] probation and, of course, substance abuse evaluation, follow through with treatment recommendations, continuing his mental health programming . . . .

(Emphasis added.)

The defendant declined to say anything himself by way of allocution.

After the district court had heard from the attorneys, the court stated in part as follows:

Mr. Fetner, at the time of sentencing I'm required to impose a sentence that I feel is appropriate to meet your needs for rehabilitation and also to do what's necessary to protect the community from any further offenses by you or by others. There's a number of things that factor into that: Your age, your prior criminal history, your employment and family and personal circumstances that I've been made aware of, the nature of the charge, the recommendation of the parties, and anything else that I've learned about you throughout the proceeding.

Mr. Fetner, certainly any time I have a defendant here who's, you know, in on a second or third or in your case, you know, someone who's charged six times for the same offense, it's clear that whatever we've done in the past has not been sufficient to rehabilitate you, and there's obviously a finite number of options we have for sentencing, you know, and those range from what your attorney is asking for, which is a suspended sentence and placement in the community, you know, with some support services from probation, you know, and range up to, you know, prison, which is what the state is recommending.

When I look at all these factors, Mr. Fetner, there's a number of concerns. Obviously the main one being the continuation of these same types of offenses over and over again. You know, despite that, you've got a wide variety of things in your criminal history, not just the drug offenses but OWI's, you know, and a number of driving offenses but also harassment, theft, assault, absence from custody, and, you know, for a person your age, you've amassed an unfortunately long criminal history. That's only one of the factors that I look at, but it's clear that, you know, you are persistent in your use of an illegal substance. *I am terrified you've been helping in a day care. I would think that if the parents knew your history, they would definitely pull their children out of, you know, any day care. It's not safe for you to be caring for children if you're under the influence.* I totally understand that, you know, as you sit here today, that you are worried about returning to prison. The only way to make sure that you don't go back there is to stop breaking the law and that's a lesson that you have not learned yet.

(Emphasis added.)

Defense counsel viewed Fetner's working in a day care as a positive. However, the district court is required to determine the sentence that would provide maximum opportunity for Fetner's rehabilitation and protection of the community from further offenses. *See* Iowa Code § 901.5 (2019). It saw Fetner's unrehabilitated presence in the day care as a negative. Most Iowans, I suggest, would share the district court's common-sense perspective.

As the majority opinion acknowledges, the district court's sentence "is cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Fetner "must overcome the presumption in favor of the sentence by affirmatively demonstrating the court relied on an improper factor." *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020); *see also State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018) ("A defendant must affirmatively show that the sentencing court relied on improper evidence to overcome this presumption of validity."); *State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015) (same); *State v. Sailer*, 587 N.W.2d 756, 763–64 (Iowa 1998) (affirming sentence when defendant did not establish "any reliance

on improper factors which would overcome the presumption that the district court properly exercised its discretion"). Fetner failed to meet his burden.

In this case, the district court did not consider an unproven or unprosecuted offense. *See, e.g., State v. LeGrand,* 501 N.W.2d 59, 63–64 (Iowa Ct. App. 1993) (rejecting such an argument where the district court's comments were based on facts in the record and the defendant's criminal history). It drew a rational inference based on undisputed facts. Actually, it didn't even draw an inference; it just raised a reasonable *question.* Based on the undisputed facts that (1) Fetner is an active marijuana user who seems to self-medicate with marijuana for anxiety and (2) Fetner helps out in a day care and has no other employment, the district court observed that *if* Fetner is caring for children while under the influence, that would not be safe. This is an entirely legitimate question to raise. After all, what could be more stressful than managing young children?

So this case really comes down to word selection in the three sentences italicized above. For example, the district court said it was "terrified." That's a bad choice of words, although perhaps one suggested by defense counsel's prior use of the same word.

Let's engage in a thought experiment. Suppose the district court had said essentially the same thing but more diplomatically. For instance:

> *I am concerned you've been helping in a day care. I think parents familiar with your background would not want their children to be attending that day care. If you are actually under the influence while caring for children, that would not be safe.*

In that event, I submit we would be affirming Fetner's sentence without a second thought. Accordingly, I would affirm the district court and the court of appeals here.

Waterman, J., joins this dissent.