**STATE of Iowa, Appellee,**

v.

**Ronald Eugene LANPHEAR, Appellant.**

**No. 55589.**

Supreme Court of Iowa.

July 31, 1974.

Donald W. Sylvester, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen., Zigmund Chwirka, County Atty.. for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

Ronald Eugene Lanphear was charged by county attorney's information with robbery with aggravation contrary to section 711.2, The Code. Following his plea of not guilty defendant was tried and convicted by a jury of the lower included offense of robbery without aggravation contrary to section 711.3. He appeals from judgment entered on that verdict.

A few minutes after 8 p. m. January 1, 1972, Brian Dvorkin, a cab driver for the Yellow Cab Company in Sioux City, received a call to pick up a passenger at Fourth and Virginia Streets. He proceeded to that address and stopped near a man standing on Fourth Street in front of a barber college and near the CIO building. He slid across the front seat and asked the man if he had called for a cab; after momentary hesitation the passenger got in the back seat. Dvorkin slid back across the seat to the driver's side and proceeded on. As the customer entered the cab he was within one or two feet of the driver. Dvorkin remembered he had copper blond curly hair, weighed about 150 to 180 pounds with medium to stocky build, was about 5 feet 6 inches to 5 feet 10 inches in height and was wearing dark pants and a CPO jacket.

The passenger instructed Dvorkin to take him to Eighth and Court Streets; there he was told to turn right and proceed about one-half block on Eighth Street. During the trip Dvorkin spoke with the customer but glanced only briefly into the back seat where he sat on the right side. When Dvorkin finally pulled over and turned around to collect his fare the passenger put a pocketknife to his neck, told him to turn around and demanded all his money. He also muttered something about having a gun in his pocket. Dvorkin immediately handed over about $24.

After telling him not to turn around or call anyone for five minutes the robber took the keys and fled. Shortly thereafter, Dvorkin called his dispatcher and gave him a description of the robber; this information was immediately relayed to the police.

Patrolman Bandza arrived at the scene a short time later, talked with Dvorkin, received a description of the robber from him and relayed that information over police radio. About 8:25 p.m. a second officer brought a suspect to the scene; Dvorkin observed this man who was wearing jeans, a plaid CPO jacket and a stocking cap but stated he was not the robber because of his thinner build and appearance. A few minutes later a second police car arrived carrying defendant. He was brought

to Dvorkin and stated something like, "Am I the one who robbed you?". Dvorkin replied, "You most certainly are," and identified him as the robber.

Following the identification defendant was placed under arrest and warned of his constitutional rights. Since defendant earlier stated he had been drinking at the Scandia Bar about the time of the robbery Officer Bandza and Lieutenant Anders then took him there to check out his story. While defendant waited outside Anders talked with the bartenders and they came to the door and looked at defendant. They told the lieutenant they had never seen him before and he had not been in the bar.

Defendant presents two assignments claiming the trial court erred: (1) in permitting into evidence hearsay testimony relative to identification of defendant and (2) in allowing a State's witness to give testimony varying from and not included in the minutes of testimony attached to the information. The assignments will be considered in reverse order.

I. In his second assignment defendant asserts the trial court committed prejudicial error in admitting testimony of Officer Bandza which apparently contradicted statements in the minutes of testimony attached to the information. Defendant's argument is basically that the new and different testimony was a complete surprise and since it concerned matters relevant to defendant's alibi evidence its admission constitutes reversible error.

In view of the apparent confusion indicated in the record it is deemed advisable to point out that where an alibi is asserted defendant is attempting to prove that at the time the crime charged was perpetrated he was not at the scene of the offense but was at another place so remote or under such circumstances he could not have committed the crime or otherwise participated in its commission. State v. Gillespie, 163 N.W.2d 922, 925 (Iowa 1969).

■■■ Defendant did not file notice of alibi as required by section 777.18. However, in this state it is well settled that a defendant may in the absence of notice of alibi required by this statute take the stand and claim he was far from the scene of the crime and it is only when defendant elects to go farther by calling witness to support his alibi contention that the requirement of section 777.18 must be met. Of course, defendant does not have the burden of proving alibi. State v. Evans, 169 N.W.2d 202, 203 (Iowa 1969).

The testimony in question concerned Officer Bandza's observation of defendant about 8 p.m. on January 1. At trial the officer testified he first observed defendant about 8 p.m. on Jennings Street between Third and Fourth Streets near an alley as defendant walked north on Jennings. Defendant was observed about five minutes later leaving Kay's Club, a bar in the 900 block of Fourth Street, and only a short distance from where defendant was first noticed on Jennings Street. Thereafter, defendant crossed Fourth Street and entered the CIO bar for a moment; after leaving there defendant proceeded on Fourth Street towards Virginia Street and Bandza discontinued his observation.

Defendant objected to Bandza's testimony for the reason it was not contained in the minutes of testimony attached to the information and that such testimony was a contradiction of the minutes of Bandza's testimony furnished defendant.

Examination of the minutes of testimony attached to the information as shown by the clerk's transcript in this matter discloses that the county attorney certified Bandza would testify "that on or about January 1, 1972, at approximately 8 p.m., while working in the downtown area, he noticed a white man in his 20's walking from an alley in the 300 block of 10th Street; that this man was a little suspicious so he continued to watch him, and he saw him go into the CIO bar, come right out again, and then continue walking east on 4th Street."

Defendant testified that at 8 p.m. January 1 he was in the vicinity of Twelfth

and Douglas Streets. Apparently, this is close to the 300 block of Tenth Street mentioned in the minutes of Bandza's testimony. As near as we are able to determine from the record the 300 block of Tenth Street is about one and one-fourth miles from the CIO bar on Fourth Street.

Since this offense was charged by county attorney's information section 769.4, The Code, is applicable. It provides:

"Names of witnesses—minutes of evidence. The county attorney shall, at the time of filing such information, indorse or cause to be indorsed thereon the names of the witnesses whose evidence he expects to introduce and use on the trial of the same, and shall also file with such information a minute of the evidence relating to the guilt of the accused of the offense charged of each witness whose name is so indorsed upon the information."

■ Under this statute the county attorney is not required to attach copies of sworn minutes of the evidence to the information nor is it required that such minutes show the witnesses were sworn. See State v. Cornwell, 189 N.W.2d 611–612 (Iowa 1971) and authorities cited. They need not be signed by the witnesses.

■ The State is not limited to the minutes of testimony in its examination of witnesses. In State v. Cunha, 193 N.W.2d 106, 111 (Iowa 1972), this court said: "A witness whose name is endorsed on the indictment (or information), and minutes of whose testimony are filed, is not limited to those minutes in his actual testimony. * * * [citing authorities]." See also State v. Lynch, 197 N.W.2d 186, 190 (Iowa 1972).

■ Insofar as Bandza's testimony went beyond that certified in the minutes of his testimony attached to the information the trial court did not err in admitting it over defendant's objection.

Insofar as defendant's assignment is predicated on the contention there is a var-

iance requiring reversal attention is directed to the fact defendant's complaint does not concern any alleged variance between the allegations of the information charging the offense and the evidence offered as proof of some essential of the charge but rather is based on the assertion Bandza's testimony varied from the minutes of his testimony furnished defendant. Defendant cites no authority in support of his position nor have we found any through independent research.

■ From the indefiniteness of the record presented and in light of Officer Bandza's explanation of any apparent disagreement between his testimony and the minutes attached to the information we conclude the assignment does not require reversal. Contrary to defendant's contention the contradictory testimony prejudicially affected his defense of alibi, it is our view the testimony only threatened the credibility of the defense. It did not affect defendant's ability to use that defense.

II. In his other assignment defendant maintains the trial court committed reversible error in permitting hearsay testimony concerning identification of defendant by others. It should be noted this problem does not concern identification of the accused by the victim or other eyewitnesses of the offense; rather, it involves the lack of identification by persons defendant hoped would corroborate an alibi. Dvorkin, the victim of the crime and apparently the only eyewitness, positively identified defendant shortly after the offense.

As stated, when first picked up defendant told Lieutenant Anders he had been in the Scandia Bar about the time of the robbery. After Dvorkin identified defendant as the robber Anders and Bandza took defendant to that bar to check his alibi. After viewing defendant through the door the bartenders told Anders they had not seen defendant before and he had not been in their bar that evening. In the meantime defendant was in the police car.

At trial Anders was asked what occurred at the bar. Defendant's timely objection

that any testimony concerning statements of the bartenders was hearsay and therefore inadmissible was overruled.

State v. Smith, 195 N.W.2d 673, 675–676 (Iowa 1972) adopts this definition of hearsay:

"In rule 301, Proposed Rules of Evidence for the United States Courts and Magistrates, hearsay is defined in this manner:

" '(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

" '(b) Declarant. A "declarant" is a person who makes a statement.

" '(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

" '\* \* \*'

"The omitted portion of the quoted rule deals with statements which are not hearsay.

"The Advisory Committee in commenting on subdivision (c) said: 'The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. McCormick § 225; 5 Wigmore § 1361, 6 id. § 1766.' "

See also State v. Kelsey, 201 N.W.2d 921, 924 (Iowa 1972) and State v. Miller, 204 N.W.2d 834, 840 (Iowa 1973).

Anders testified about statements made to him by the bartenders and the statements were offered as evidence that defendant had not been in the Scandia Bar at the time of the robbery.

The State concedes in written argument Anders' testimony relating what the bartenders told him was hearsay but seek to avoid a reversal by insisting the admission of this testimony was harmless error and hence not prejudicial so as to require a reversal, citing State v. Kelsey, 201 N.W.2d at 927.

In regard to harmless constitutional error the "overwhelming evidence of guilt" approach has been discarded and the inquiry focused on "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Vaccaro v. United States, 461 F.2d 626, 637 (5 Cir. 1972), citing among others Chapman v. State of California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705.

In *Chapman* petitioners urged the Court to hold that all federal constitutional errors regardless of facts and circumstances must always be deemed harmful. The majority declined to adopt such a rule and concluded "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 386 U.S. at 21–22, 87 S.Ct. at 827, 17 L.Ed.2d at 709.

■ Only if the court can declare with confidence "beyond a reasonable doubt" that a reasonable possibility the evidence complained of might have contributed to the conviction is excluded by the record can it pronounce a constitutional error to be harmless. Vaccaro v. United States, 461 F.2d at 637–638. In other words, before a constitutional error can be held harmless the court must be able to declare a belief it was harmless beyond a reasonable doubt.

■ Anders' testimony detailing statements made to him by the Scandia bartenders relative to their never having seen defendant before and that he had not been in the bar was hearsay and erroneously admitted. However, applying the standards set forth in *Chapman* to the record before us we are convinced beyond a reasonable doubt there was no reasonable possibility the evidence complained of might have contributed to defendant's conviction.

The evidence shows the victim of the crime observed the physical characteris-

tics, including height, weight, build and hair color of the passenger who ultimately robbed him. He also listened to his voice and observed and noticed the type and color of clothing worn by the robber. The description of the passenger given by Dvorkin immediately following the crime closely matched defendant's appearance in regard to physical characteristics, type and color of clothing. Finally, the fact which stands out most clearly is Dvorkin's identification of defendant after seeing him and hearing his voice. It should be noted Dvorkin stated another suspect dressed similarly to defendant was not the robber.

Defendant's testimony of his activities the evening of January 1 was uncorroborated. His statement he was in the vicinity of Twelfth and Douglas Streets about 8 p.m. was directly contradicted by the testimony of Officer Bandza who saw defendant on Jennings Street about 8 p.m. and a few minutes later walking along Fourth towards Virginia Street, the approximate location where Dvorkin picked up the robber.

The case is therefore—Affirmed.