STATE of Iowa, Appellee,

v.

Robert Eugene PILCHER, Appellant.

No. 58024.

Supreme Court of Iowa.

May 19, 1976.

Thomas M. Walter, Ottumwa, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Samuel O. Erhardt, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and McCORMICK, JJ.

LeGRAND, Justice.

After indictment by the Grand Jury, defendant was convicted of the crime of perjury committed in violation of § 721.1, The Code. He appeals, and we affirm the judgment.

The perjury charge grew out of defendant's testimony in his earlier trial for sodomy, a crime of which he was also convicted. His conviction was reversed on appeal. *See State v. Pilcher,* Iowa, 242 N.W.2d 348, filed May 19, 1976. The reversal was solely on the ground our sodomy statute (§ 705.1, The Code) is unconstitutional as applied to defendant under the given circumstances.

In the sodomy trial defendant was said to have handcuffed his victim, Roma Waterhouse, before forcing her to submit to him. Defendant denied he had handcuffs at the time of the offense. He testified he bought them later from Robert Shinafelt.

The testimony in the sodomy trial which the State says was perjurious is the following:

"I got [the handcuffs] a little before four o'clock before I took my wife to dinner on April 5, 1974."

The time defendant testified he obtained the handcuffs was *after* the alleged sodomy was committed. Defendant's testimony above set out related to a point crucial to the sodomy prosecution. Roma Waterhouse's whole story, emphasizing as it did her nonconsent to the sodomitical act, was

premised on the use of force initiated when defendant handcuffed her hands behind her back.

If the jury believed defendant did not have these handcuffs at the time of the assault, Mrs. Waterhouse's credibility would have been seriously impaired, if not completely destroyed.

We explained the elements of perjury in *State v. Deets,* 195 N.W.2d 118, 122 (Iowa 1972), where we said:

"A false statement of fact knowingly made under oath or affirmation is material and will support a charge of perjury if it directly or circumstantially (1) supports or attacks the credibility of a witness, or (2) has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or (3) is capable of influencing the court, officer, tribunal or other body created by law on any proper matter of inquiry."

The testimony heretofore set out, brief though it was, clearly meets the *Deets* definition of perjury. The fact the case in which the false testimony was given has been reversed is immaterial.

Defendant raises the following issues:

1. Error in permitting the jury to consider the Grand Jury indictment charging defendant with sodomy;

2. Error in permitting testimony concerning the use of handcuffs and the effect thereof on the sodomy victim;

3. Denial of defendant's motion for directed verdict; and

4. Error in sentencing procedures.

■ I. We consider first the question concerning the trial court's admission of the sodomy indictment as an exhibit, permitting the State to read the indictment to the jury, and later allowing the exhibit to go to the jury room during that body's deliberations.

Defendant says this was reversible error. He argues the indictment had no probative value and that the jury was prejudiced by knowledge he was accused of such an infamous crime. We hold the indictment was properly admitted.

■ In a perjury prosecution it is the general rule the jury must know enough about the circumstances under which the offense occurred to permit an intelligent consideration of the case. Instead defendant would limit their knowledge to the bare statement relied on taken out of testimonial context with no reference to the circumstantial background against which it was made. We reject defendant's argument. *See* 60 Am.Jur.2d, Perjury, § 60, page 1001 (1972); 70 C.J.S. Perjury § 54, pages 526–527 (1951). *Cf. State v. Thompson,* 254 Iowa 331, 335, 117 N.W.2d 514, 516 (1962).

A somewhat similar problem was posed in *People v. Stanard,* 32 N.Y.2d 143, 344 N.Y. S.2d 331, 333, 297 N.E.2d 77, 78–79 (1973), where the Court of Appeals of New York in considering a perjury case said:

"We are in accord with the doctrine that, in cases of this nature, in order to make the subject matter of a defendant's perjury intelligible to the jury, some general background evidence of the nature and structure of the scheme is permissible (citations).

" * * *

"Despite our agreement with the principle that some background testimony is permissible in cases of this nature, we emphasize that, as in *People v. Gleason,* 285 App.Div. 278, 281–282, 136 N.Y.S.2d 220, 224 *supra,* 'the introduction of such [background] evidence must be carefully monitored by the trial judge, as it is an accommodation that the general rules of evidence must at times make to the exigencies of the particular instance. * * Every precaution must be taken lest it spill over its barriers and distort the jury's contemplation of the determinative and critical evidence.'"

We agree with the rationale of this statement, both as to the necessity for the jury to be informed and the danger of prejudice if the evidence is not carefully monitored.

■ In the present case, the jury heard nothing except that defendant had been

tried for sodomy. The indictment recited no details. No lurid circumstances were shown. The fact the indictment did not describe a "nice" crime is not alone sufficient to keep the jury in ignorance of the manner in which the perjury charge arose.

We find no error in this assignment.

■ II. In a somewhat related issue, defendant asserts it was error to allow Roma Waterhouse to testify concerning the use of the handcuffs and the effect such use had upon her. Defendant's complaint rests principally on the ground of relevancy. As in Division I, he insists the admission of such testimony was highly prejudicial.

As already pointed out, the State's case rested on proving beyond a reasonable doubt defendant had in his possession a pair of handcuffs at the disputed time. The two principal witnesses—Roma Waterhouse and defendant—categorically differed on this vital matter. Defendant seemingly would limit the evidence to a stark affirmation by her and denial by him. He argues, implicitly at least, no other testimony is relevant or material in deciding the handcuff issue. We refuse to take such a narrow view under the record before us.

We set out the testimony of Roma Waterhouse with reference to this matter:

"Q. Were you acquainted with [defendant] on April 5th, 1974?

"A. Yes.

"Q. And on that day, did you have an occasion to visit a farmhouse west of Ottumwa, Iowa, with the defendant?

"A. Yes, sir.

" * * *

"Q. And while in the bedroom, did you have occasion to see a pair of handcuffs?

"A. Yes, I did.

"Q. And from where did these handcuffs come, if you know?

"A. Somewhere on [defendant's] body.

" * * *

"Q. And what did the defendant do with the handcuffs, if anything?

"MR. WALTER: Objected to, Your Honor, incompetent, irrelevant and immaterial to any issue in this cause.

"THE COURT: Overruled. You may answer.

"THE WITNESS: He put them on me.

"Q. Can you show the jury how he put them on you?

"A. My hands behind my back—

"MR. WALTER: Objected to as having no bearing on any issue in this cause.

"THE COURT: Overruled.

"THE WITNESS: He put them on with my hands behind me.

"Q. Approximately how long did he leave these handcuffs on you?

"A. I'm not sure because—I'm not sure how long they were on.

"Q. Can you make an approximation?

"A. Maybe ten, fifteen minutes.

" * * *

"Q. After the handcuffs were removed, did you have occasion to see them again?

"A. No, I didn't. * * *

"Q. Did you have occasion to observe your wrists?

"A. Yes.

"Q. —later?

"A. Yes, I did.

"Q. And tell the court what you observed about your wrists?

"MR. WALTER: Just a second. I object. Incompetent, irrelevant, immaterial. Has no bearing on any issue in this cause.

"THE COURT: Overruled.

"THE WITNESS: They were red. Later they turned to bruises.

"Q. How long did those bruises last?

"A. Oh, about a week."

Defendant's complaints deal with three questions and answers which related to the jury that defendant placed the handcuffs on Mrs. Waterhouse and that they left red marks which later turned to bruises lasting about a week.

■ Counsel interposed objections to these questions, all on the basis of incompetency, irrelevancy and immateriality. The first two objections sought to exclude Mrs. Waterhouse's testimony about defendant's conduct during the commission of the crime itself.

Both of these questions and their answers were clearly admissible. They were simply descriptive of the manner in which the crime was committed. In *State v. Drake,* 219 N.W.2d 492, 494 (Iowa 1974), this appears:

"[T]he circumstances surrounding the commission of a crime may ordinarily be shown, even if such evidence would otherwise be inadmissible. We recently reiterated this principle in *State v. Lyons,* 210 N.W.2d 543, 546 (Iowa 1973) * * * "

*See also State v. Fryer,* Iowa, 243 N.W.2d 1, filed May 19, 1976; *State v. Henning,* 238 N.W.2d 783, 785 (Iowa 1976); *State v. Hinkle,* 229 N.W.2d 744, 748–749 (Iowa 1975); 22A C.J.S. Criminal Law § 603, page 409 (1961).

■ This leaves for consideration only the last challenged question and answer concerning the condition of Mrs. Waterhouse's wrists during the week following the assault. The witness stated her wrists were red. She added the discoloration later turned into bruises. Then in response to a further question to which no objection was made she said the bruises lasted "about a week."

We believe the testimony about the condition of Mrs. Waterhouse's wrists at a subsequent time might well have been excluded. Assuming defendant's trial objections went to all of the matters about which he now complains, we find nothing in the witness' answers so prejudicial as to constitute reversible error. We find no abuse of discretion in the trial court's ruling.

III. Defendant also asserts it was error to overrule his motion for directed verdict. He says the uncorroborated testimony of Roma Waterhouse was insufficient to submit the case to the jury. *See State v. Thompson, supra,* 254 Iowa at 340–341, 117 N.W.2d at 519 and citations.

■ We hold against defendant on this issue. The testimony of Roma Waterhouse

was positive in ascribing falsity to the defendant's testimony at the sodomy trial. Another witness produced by the State, Robert L. Shinafelt, supported her testimony in important detail.

Mr. Shinafelt is the one who provided defendant with the handcuffs. He was an uncertain and vacillating witness. At first he said he sold the handcuffs to defendant on April 3, 1974. Later he said the date was April 5, 1974. At still another place he indicated he did not know when the sale took place except that it was during "that week."

However, his testimony was positive the sale took place no later than April 5, 1974, because that was his last day in Ottumwa. This was also the day defendant allegedly committed sodomy with Roma Waterhouse. It is true Shinafelt was also unsure about the time of the day he sold defendant the handcuffs, but there was evidence from which the jury could find defendant had the handcuffs before he took Mrs. Waterhouse to the farm near Ottumwa on April 5. His testimony fully supported her in this matter.

The trial court properly denied defendant's motion for directed verdict.

■ IV. Defendant's last assignment assailed the punishment imposed as excessive because his sentence was made to run consecutively to the sentence upon his sodomy conviction. Since that judgment has been reversed, the issue is now moot.

AFFIRMED.