STATE of Iowa, Appellee,

v.

David Lynn TOMLINSON, Appellant.

No. 58423.

Supreme Court of Iowa.

June 30, 1976.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals conviction and sentence for delivery of cocaine in violation of § 204.401(1), The Code. He contends the trial court erred in refusing to instruct the jury on his defense of entrapment. We reverse the trial court.

■ In *State v. Mullen*, 216 N.W.2d 375, 382 (Iowa 1974), we adopted an objective test for the defense of entrapment. We held entrapment occurs when a law enforcement agent induces the commission of the offense, using persuasion or other means likely to cause normally law-abiding persons to commit it. Conduct merely affording a person an opportunity to commit an offense is not entrapment. We also held the trial court shall determine the issue as a matter of law when there is no dispute as to the facts or the inferences to be drawn from them but shall submit the issue to the jury when the defense is properly raised and there is a dispute in the evidence relating to the operative facts or the inferences to be drawn from them.

■ Even though the burden to generate a fact question on a defense of entrapment is on the defendant, *State v. Ostrand*, 219 N.W.2d 509, 512–513 (Iowa 1974), when a fact question exists the burden is on the State to disprove entrapment beyond a reasonable doubt. *State v. Baumann*, 236 N.W.2d 361, 363–364 (Iowa 1975); *State v. Fagan*, 190 N.W.2d 800, 802 (Iowa 1971).

■ The trial court held the evidence was insufficient to present a fact question on the defense of entrapment in this case. Although the State argues defendant did not preserve error on this issue, we do not agree. The record shows defendant requested an instruction on the defense and, when the trial court failed to include the instruction in its proposed final draft of instructions, engaged in a colloquy with the court in support of the instruction covering eight pages in the transcript. The record shows defendant not only excepted to the trial court's failure to instruct on the defense of entrapment but excepted at length to the court's failure to include the request-

ed instruction in the final draft of instructions. Defendant fully alerted the trial court to the point of law and question of fact on which he relied in urging the requested instruction be given. The procedure met the requirements of rule 196, Rules of Civil Procedure. *State v. Gilmore*, 181 N.W.2d 145 (Iowa 1970).

■ In addition, defendant's exception to the court's failure to instruct on the defense would itself be sufficient to preserve error. The case was defended on the theory of entrapment in the manner prescribed in *State v. Bruno*, 204 N.W.2d 879, 882–883 (Iowa 1973). A trial court has a duty to instruct fully upon the issues which the jury must decide whether requested to do so or not. *Elkader Cooperative Company v. Matt*, 204 N.W.2d 873, 876–877 (Iowa 1973); *State v. Carey*, 165 N.W.2d 27, 36 (Iowa 1969). Therefore, if the evidence was sufficient to support jury consideration of the defense of entrapment, the trial court would be obliged to instruct the jury on the issue even without a requested instruction. Defendant adequately preserved his record on the court's refusal to instruct the jury on his entrapment defense.

■ We must decide whether the evidence was sufficient to require jury submission of the issue. In doing so, we view and will recite the evidence in its light most favorable to defendant.

The record shows defendant was 18 years old at the time of the alleged offense. He resided with his parents and was employed in a meatpacking plant. He was a close friend of James Sparks whom he had known since the two were in second grade.

At about 5:00 p. m. on December 17, 1974, defendant received a telephone call at his home from Sparks. Sparks asked defendant if he could get him two grams of cocaine for a friend of his. Defendant heard someone talking in the background and asked Sparks who it was. Sparks said it was Jim Porter, a good friend. Defendant heard Porter tell Sparks he wanted the cocaine and wanted Sparks to ask defendant to get it. Defendant said he told

Sparks he did not want to get involved in that kind of activity. Sparks said it was for a real good friend of his who "wanted it real bad", and defendant finally said he would check into it.

Defendant planned to do nothing, thinking Sparks would not call back. However, in about a half hour he received a call from Porter. Porter asked him if he had checked into the matter yet. Defendant said he had not, and Porter urged him to do so. Porter told defendant he wanted the two grams of cocaine for a good friend of his who "wanted it real bad".

Defendant still did nothing. Then a few minutes later Sparks called him again, wanting to know if he had checked yet. Defendant had planned to go out that evening to celebrate his birthday which was the next day, but decided to check on whether he could obtain the cocaine after receiving the third telephone call. He ascertained he could obtain the cocaine from a co-employee for $180. Sparks called him again to inquire whether he had checked. Defendant told him he had. Defendant testified, "they wanted to know when I could bring it out and everything".

Arrangements were made for defendant to meet Sparks and Porter and their friend who allegedly wanted the cocaine at Sparks' house trailer between 7:30 and 8:00 p. m. Sparks, Porter, and a third person were at the trailer when defendant arrived with the cocaine, but the buyer was not present. When defendant proposed to leave, Porter made a phone call to the buyer to tell him to hurry. The buyer arrived, and defendant delivered him the cocaine for $180.

Porter was a federal informant who received payment from the federal government for participation in drug law enforcement work. The buyer of the cocaine was Al Overbaugh, a federal government undercover employee. Sparks was a private citizen. Overbaugh testified one of Porter's duties was to set up drug purchases. He said Porter told him he was trying to get Sparks to obtain drugs. Neither Porter nor Sparks testified.

Subsequent to the transaction in this case, Overbaugh sought to purchase additional cocaine from defendant on several occasions, without success.

■ In refusing to instruct the jury on entrapment, the trial court held any inducement here occurred through the activities of Sparks, a private citizen, rather than the government. The court correctly noted entrapment cannot result merely from the inducements of a private individual. However, the trial court overlooked the other side of the coin. If law enforcement officers use an individual to help them arrange the commission of a crime by another person, the officers cannot disclaim the inducements such individual offers in the course of his efforts for the officers. *State v. Ostrand,* supra, at 512.

■ The jury could find from the evidence here that Overbaugh and Porter did use Sparks to help arrange the drug transaction in this case. If they did so, they cannot disclaim his efforts simply because he was a private citizen or because the evidence does not show he was aware he was being so used.

A more difficult issue is whether, if the jury found Porter used Sparks to arrange the sale, the evidence of the combined efforts of Porter and Sparks was sufficient to generate a question of fact on the entrapment defense. See *State v. Scovill,* 224 N.W.2d 221 (Iowa 1974).

■ We have upheld the right of the State to engage in artifice and strategem to apprehend those engaged in criminal activity. However, we have also recognized the defense of entrapment, which we have said occurs when government agents induce the commission of an offense by persuasion or other means likely to cause normally law-abiding persons to commit it. The transactional negotiations of the government and the defendant are relevant evidence on that issue:

> "What was said, and the defendant's response to the inducements, should all be considered in judging what the effect of

the government conduct would be on normally law-abiding persons. Depending on an evaluation of the facts in each case, prohibited governmental activity might include extreme pleas of desperate illness, appeals based primarily on sympathy, pity or close personal friendship, and offers of inordinate sums of money." *State v. Mullen*, supra, at 383.

See *State v. Sparks*, 238 N.W.2d 777 (Iowa 1976).

The facts here bear remarkable similarity to those in *State v. Leonard*, 243 N.W.2d 75 (Iowa 1976). In *Leonard*, as in this case, the government used an informant like Porter who in turn used his relationship with a private citizen like Sparks to arrange a purchase of drugs from a friend of the private citizen like defendant. There the evidence did not show the informant ever directly communicated with the defendant. All inducements occurred through the private citizen. One issue in *Leonard* was whether the evidence established entrapment as a matter of law. Although we recognized the jury could find the private citizen acted for the government in inducing the sale, we held the evidence did not require a finding of entrapment as a matter of law. The State did not contend the evidence was insufficient for jury consideration. It does here.

■ Although the issue is close, evidence was adduced in the present case from which the jury could find the sale was induced by repeated appeals from Porter and Sparks based on Sparks' close personal friendship with defendant. The jury could find the State failed to prove beyond a reasonable doubt that the combined efforts of Porter and Sparks were not an inducement chargeable to the government which was sufficient to cause a normally law-abiding person to commit the offense. We hold defendant did generate a jury issue on the defense of entrapment. The trial court erred in refusing to instruct the jury on that theory of defense.

Defendant is entitled to a new trial.

REVERSED AND REMANDED.