STATE of Iowa, Appellee,

v.

Rick E. TRUDO, Appellant.

No. 59279.

Supreme Court of Iowa.

April 20, 1977.

Rehearing Denied May 19, 1977.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle, IV, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

REYNOLDSON, Justice.

Defendant was charged by separate county attorney informations with possession of marijuana and with delivery of marijuana, violations of § 204.401(1), The Code. These charges were consolidated by court order, and upon trial defendant was convicted and sentenced to imprisonment for two concurrent five-year terms. He appeals and we affirm.

There was strong evidence in the record from which the jury could have found the following facts.

On October 5, 1975, four officers of the Des Moines M.A.N.S. (Metropolitan Area Narcotics Squad) unit went to 1424 23rd Street, Des Moines, to execute a search warrant. Defendant was in the front yard talking to a neighbor. The officers told defendant they were looking for Frank (defendant's roommate) because they wanted to buy some marijuana from him. Defendant replied Frank had moved but he could handle anything they wanted because he was Frank's supplier.

Defendant invited the undercover policemen into the house where they negotiated a purchase of one pound of marijuana for $140. Defendant admitted leaving the house to retrieve five one-pound packages of marijuana from his "stash" in the bushes at the end of 24th Street. Upon his return he dumped these packages out of a green garbage bag onto the floor and told the officers to take their choice.

The policemen offered defendant two one-hundred-dollar bills. Defendant went upstairs for change, taking the remaining four bags of marijuana with him. Upon his return the money changed hands and he was then placed under arrest.

At this point, approximately 45 minutes after the officers arrived at the premises, they executed the search warrant and searched the premises. They recovered the four one-pound bags of marijuana and also found a quantity of other material and drug-related paraphernalia.

Upon this appeal defendant asserts trial court erred in consolidation of the charges for trial, overruling his motion to suppress evidence, admission of expert testimony, denial of his mistrial motions based on prosecutorial misconduct, and in the jury instructions. We consider these asserted errors in the divisions which follow.

I. *Consolidation of charges.*

Defendant asserts he was denied due process by trial court's *ex parte, sua sponte* order to consolidate for trial the charges contained in the two informations filed against him.

Defendant was charged in one information with possession of marijuana with intent to deliver and in a separate information with delivery of marijuana, both offenses under § 204.401(1), The Code. Both charges were set for trial on January 5, 1976.

The State filed a "Motion to Select Trial Charge" seeking permission to try the possession charge first. This motion was not resisted by defendant. Trial court denied the motion and *sua sponte* ordered a "joint trial".

Defendant argues due process requires a hearing before a trial court can decide the consolidation issue. Defendant relies on language in *State v. Denato*, 173 N.W.2d 576 (Iowa 1970). We note defendant, in district court, merely excepted to trial court's consolidation order. He never filed a motion for severance or requested a hearing. Neither below nor here does he attempt to show how he was prejudiced by the order he attacks.

In *State v. Denato*, supra, we were concerned with an *ex parte* order directing the State to disclose the identity of an informant. The factual determination which we there held necessitated a hearing is more onerous than the consolidation question which ordinarily may be resolved by a study of minutes of testimony already before the court.

■ It is clear the county attorney could have combined these two charges in a single information. Section 204.408, The Code. In that event, defendant would have been required to make a motion for severance. It would have been his burden to show his interest in receiving a fair trial uninfluenced by the prejudicial effects which could result from a joint trial outweighed the State's interest in judicial economy. See *Smith v. United States*, 357 F.2d 486, 489 (5 Cir. 1966).

■ Where, as here, the county attorney elects to file two separate informations on charges which could have been combined, we hold trial court, upon studying the informations and attached minutes of testimony,

may apply the above balancing test and order the charges consolidated for trial. Of course, either the State or defendant may then file a severance motion and obtain a hearing thereon.

■ We adopt the procedure found in A.B.A. Standards Relating to Joinder and Severance § 3.1(a), at 46–47 (Approved Draft, 1968):

"3.1 Authority of court to act on own motion. (a) The court may order consolidation of two or more charges for trial if the offenses, and the defendants if there is more than one, could have been joined in a single charge.

(b) * * *"

See *State v. Reynolds*, 250 N.W.2d 434, 438–439 (Iowa 1977); 2 Wharton, Criminal Procedure § 302, at 149–154 (12th ed. C. Torcia 1975); Annot., 59 A.L.R.2d 841 (1958); §§ 773.37, 773.38, 773.42, The Code.

■ We find no trial court error with respect to the consolidation order.

II. *Ruling on suppression motion.*

December 24, 1975, defendant filed a motion to suppress, asserting, *inter alia,* the officers' entry on the premises was obtained through trickery and artifice and that they intentionally delayed execution of the warrant in violation of §§ 751.6 and 751.8, The Code.

Trial court entered an *ex parte* order overruling the motion because it was "untimely". District Court rule 26(F) required the motion to be filed within 17 days after arraignment. See *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564 (Iowa 1976), where we held the rule was not unconstitutionally vague, it did not deny equal protection, it did not violate a defendant's statutory rights, and district judges had common-law authority to adopt it.

Nonetheless, defendant first contends trial court, rather than overruling his motion *ex parte* on the basis of a local procedural rule, should have granted a *Jackson v. Denno* type hearing on the merits. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Failure to provide the

hearing, he argues, violated his constitutional fair trial rights.

Defendant was arraigned November 12, 1975. He retained counsel (not his present attorney) on November 28, 1975. As we have indicated, the motion to suppress filed December 24, 1975 was overruled as untimely. When trial commenced January 5, 1976, defendant "excepted" to this ruling. He unsuccessfully objected to offers of exhibits found on the premises for the same reasons asserted in his motion and renewed the motion when the State rested.

■ Fifth judicial district rule 26(F), mandated by criminal case congestion in Polk County, was designed to meet the speedy trial requirements of § 795.2, The Code. *Iowa Civil Liberties Union v. Critelli,* supra, 244 N.W.2d at 570. That enactment in turn represented a statutory implementation of the speedy-trial provisions of the federal and state constitutions. *State v. Satterfield,* 257 Iowa 1193, 1195, 136 N.W.2d 257, 258 (1965).

■ In *Critelli* we noted the rule's opening clause creates "an exception permitting suspension of the rule for good cause." 244 N.W.2d at 569–570. Defendant did not utilize this escape valve. He made no effort to show the court any excuse for not timely filing the motion to suppress. Under these circumstances, we hold he waived his right to hearing and to have this evidence suppressed prior to trial. The motion was properly denied.

But defendant's brief, charitably interpreted, additionally contends trial court should have sustained his trial objections to the evidence obtained in the search. The State does not raise, nor are we required to reach, the issue whether defendant may assert as grounds for objection the same grounds alleged in his untimely motion to suppress. We examine the merits of defendant's objections.

Defendant alleges entrance into the premises was gained by fraud, stealth, ruse, artifice and subterfuge. He argues the resulting search was invalid under Amendment 4, United States Constitution, citing

*Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), and *People v. Reeves,* 61 Cal.2d 268, 38 Cal.Rptr. 1, 391 P.2d 393 (1964).

In both of those cases there was no search warrant and no reasonable grounds existed to search before the entry. The trickery involved was to gain entry for search purposes.

■ Those cases are distinguishable from the situation before us. Here the officers went to the premises armed with and intending to execute a search warrant. An opportunity to "make a buy" presented itself and they pursued it. The subterfuge involved was with respect to an undercover buy. This type of artifice has been approved by our court. *State v. Leonard,* 243 N.W.2d 75, 80 (Iowa 1976); *State v. Tomlinson,* 243 N.W.2d 551, 554 (Iowa 1976) ("We have upheld the right of the State to engage in artifice and stratagem to apprehend those engaged in criminal activity").

■ Defendant additionally asserts the evidence seized should have been excluded because the search was not "immediate", § 751.6, The Code, nor was the warrant executed "forthwith", § 751.8, The Code.

That the legislature foresaw circumstances might require some flexibility is disclosed by another provision of the same chapter:

"751.12 *Return of warrant.* A search warrant must be executed and returned to the magistrate who issued it within ten days after its date. After the expiration of such time the warrant, unless executed, is void."

A search warrant is issued when a proper showing is made before a magistrate that probable cause exists to believe § 751.3 property is kept in or on the premises to be searched. See § 751.5, The Code. Where there is delay in executing the warrant, there is a danger the situation will change so that circumstances which supported the magistrate's determination of probable cause will no longer exist.

On the other hand, most courts confronted with the statutory "forthwith" and "immediate" language have seasoned their in-

terpretations with a dash of pragmatism. Such terms have been interpreted as requiring service within a reasonable time, depending on the facts and circumstances of each case. See, e. g., *United States v. Harper,* 450 F.2d 1032, 1043–1044 (5 Cir. 1971); *Spinelli v. United States,* 382 F.2d 871, 885 (8 Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Commonwealth v. Cromer,* 313 N.E.2d 557 (Mass.1974).

In the case before us, the officers were delayed only 45 minutes, the time required for an unanticipated drug buy. Execution of the warrant would have destroyed that opportunity. We hold the delay was reasonable and the evidence was not subject to exclusion on this ground.

### III. *Prosecutorial misconduct.*

Defendant asserts trial court erred in overruling two motions for mistrial.

The first motion for mistrial followed questions asked by the prosecutor concerning marijuana stems and stalks found in bedrooms of third persons during the search and the attempted introduction of this material into evidence. Trial court sustained defendant's objections to questions concerning this material and admonished the jury to disregard it.

While defendant characterizes the places this material was found as "third persons' bedrooms", at another place in his brief one of these persons is designated as a "roommate". One such person had moved from the house. There is a clear inference in the testimony defendant had control over personal property located in this person's "bedroom" and intended to move it to a new location.

Defendant argues evidence of a third person's crime or offense is not ordinarily relevant to the issue of guilt of the accused, citing *State v. Oppedal,* 232 N.W.2d 517, 520–524 (Iowa 1975) and *State v. Harper,* 222 N.W.2d 450, 452 (Iowa 1974). It should be noted, however, reversal in those cases resulted from the admission of evidence which was plainly irrelevant and prejudical.

In this case the evidence was not admitted and the jury was admonished to ignore it.

Defendant argues even though the evidence was not admitted, it was so flagrantly prejudicial he was entitled to a mistrial. We are not so persuaded. Not all conduct entitles defendant to a new trial. It must reach such proportions that his trial becomes an unfair one. *State v. Hansen,* 225 N.W.2d 343, 348 (Iowa 1975); *State v. Carey,* 165 N.W.2d 27, 32 (Iowa 1969).

A trial court has a wide discretion in granting or denying a motion for a mistrial. We intervene only where this discretion is abused. Abuse of discretion is shown only when it is demonstrated that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Brewer,* 247 N.W.2d 205, 211 (Iowa 1976); *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976).

While we do not condone the prosecutor's persistence in this instance, we do not find trial court abused its discretion in overruling the above mistrial motion.

The second mistrial motion was based on alleged prosecutorial misconduct in closing argument.

Prosecutor in argument commented he thought the evidence showed what defendant's business was. He also made a comment about turning the defendant back into the community. The arguments were not reported and the record is obscure. Trial court thought the comments were in proper response to defense counsel's argument.

The statement concerning defendant's business had a foundation in the evidence and was arguably relevant on the issue of defendant's intent to deliver which State was required to show on the possession charge.

The comment that the jury should be concerned about returning defendant to the community was improper, but not as inflammatory as the comments in *State v. Monroe,* 236 N.W.2d 24, 30 (Iowa 1975) or *State v. Vickroy,* 205 N.W.2d 748, 751 (Iowa

1973). Such misconduct does not always mean defendant was denied a fair trial or that trial court erred in overruling a mistrial motion. *State v. Brewer,* supra, 247 N.W.2d at 214–216; *State v. Hall,* 235 N.W.2d 702, 726 (Iowa 1975).

Applying our above rules for review of trial court's action in denying the motion, we find no reversible error here.

IV. *Admission of expert testimony.*

During direct examination a M.A.N.S. officer was asked, "[D]o you have an opinion as to whether or not the possession of five pounds of marijuana is normal for personal use or would it be considered for distributive use?" Objection was made this was not the proper subject of expert testimony, witness not qualified, invading the province of the jury. The objection was overruled. The following episode then occurred:

"A. May I speak to the prosecutor for a minute?

"MR. MILLER: I object to any colloquy conversation and ask that they proceed in a normal form.

"Q. (by Mr. Starr) Do you remember the question?

A. Yes, sir.

"Q. Would you answer?

[No objection]

A. I have been in situations where a pound or more would be far in excess of one's personal use. However,—

"MR. MILLER: I move to strike that answer as not responsive. Any further explanation would be beyond the question, your honor."

Trial court admonished the witness to answer no further and overruled the motion to strike.

Defendant contends trial court's ruling was error, citing *State v. Ogg,* 243 N.W.2d 620, 621 (Iowa 1976) and *State v. Oppedal,* supra, 232 N.W.2d at 524. See also *State v. Nimmo,* 247 N.W.2d 228 (Iowa 1976); *State v. Swartz,* 244 N.W.2d 553, 555 (Iowa 1976).

Ordinarily defendant's contentions could be easily resolved by simply noting the objection was premature. The witness was merely asked if he had an opinion; not what the opinion was. See *Harrison v. Ulicki,* 193 N.W.2d 533, 537 (Iowa 1972); *State ex rel. Fulton v. Scheetz,* 166 N.W.2d 874, 882 (Iowa 1969). Further, the issue defendant raises here is based upon alleged trial court error in overruling the objection, not in overruling the motion to strike.

But it is also apparent the prosecution, in an ill-advised effort to gild the lily, was attempting to elicit testimony in an area we indicated was forbidden to experts at least four months before this trial. *State v. Oppedal,* supra.

■ We are not required in this case to determine whether the objection should have been sustained. Assuming the ruling was wrong, we conclude in this instance there was nothing so prejudicial as to constitute reversible error.

■ Examining case precedents, we place to one side those decisions involving constitutional errors. The harmless constitutional error rule, well articulated in *State v. Blackwell,* 238 N.W.2d 131, 136–137 (Iowa 1976) and *State v. Lanphear,* 220 N.W.2d 618, 622 (Iowa 1974), holds that to affirm a conviction the court must be able to declare a belief the error was harmless beyond a reasonable doubt. In *Blackwell* and *Lanphear* we held constitutional errors harmless. Compare *State v. Nelson,* 234 N.W.2d 368, 372 (Iowa 1975).

Defendant does not assert the alleged error in this case assumes constitutional dimensions. We thus apply a less stringent rule to determine whether a ruling on admission of evidence was prejudicial: Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice? *State v. Mayhew,* 170 N.W.2d 608, 619 (Iowa 1969); *State v. Johnson,* 219 N.W.2d 690, 698–699 (Iowa 1974); see *United States v. Parker,* 491 F.2d 517, 524 (8th Cir. 1973); *State v. Pilcher,* 242 N.W.2d 367, 371 (Iowa 1976); *State v. Mattingly,* 220 N.W.2d 865, 869 (Iowa 1974).

■ An ancillary rule is involved in determining whether defendant's rights have

been injured by the incident under scrutiny: ordinarily, a defendant may not claim prejudice where the same evidence is otherwise supplied by the defendant or is made overwhelmingly clear in the record. *State v. Leonard,* 243 N.W.2d 887, 891 (Iowa 1976) ("Ordinarily admission of evidence is not prejudicial when the evidence is of matters conceded by the defendant"); *State v. Jurgenson,* 225 N.W.2d 310, 312 (Iowa 1975) ("[E]rror in the admission of evidence is not prejudicial where substantially the same evidence is in the record without objection"); *State v. Dykers,* 239 N.W.2d 855, 858 (Iowa 1976); *State v. Billberg,* 229 Iowa 1208, 1215, 296 N.W. 396, 400 (1941); *State v. Anderson,* 154 Iowa 701, 703, 135 N.W. 405 (1912); see *State v. Hall,* 235 N.W.2d 702, 723 (Iowa 1975); *State v. Johnson,* 222 N.W.2d 483, 486 (Iowa 1974).

Turning to the issue before us, it is plain the offending question and the rather innocuous volunteer answer might tend to show defendant's possession of the marijuana was with intent to deliver to others and not for personal use. It was unquestionably injected into the case for that purpose. See *State v. Ogg,* 243 N.W.2d 620, 621 (Iowa 1976) ("Ordinarily possession of drugs is either for personal use or for delivery to others. Quite obviously Officer Zimmerman's answer was intended to convey the idea defendant was guilty of the latter rather than the former").

However, there was overwhelming evidence in this case that defendant's possession was with intent to deliver. It is undisputed he offered to sell marijuana to the undercover policemen by the pound. He went to his "stash" and brought back five pounds, dumping them on the floor from a green garbage bag for them to make a selection at $140 per pound.

Defendant readily admitted he purchased the marijuana in Minnesota. He asserted he would not have sold it to these unknown persons if he had not been high on marijuana and five bottles of beer. He readily conceded he had weighed some of the marijuana into "lids"—bags with tags attached to show the weight.

At no place in his extensive testimony did defendant claim he was in possession of this marijuana for his personal use. The evidence overwhelmingly disclosed he intended to sell it, and did. The jury convicted him of delivery, the second charge upon which he was being tried. We find in this instance defendant's case was not injuriously affected by the alleged error, nor did it result in a miscarriage of justice.

On this record and under the above rules, we hold defendant was not prejudiced by the controverted question and answer.

V. *Objections to jury instructions.*

Defendant objected to the words "normal law-abiding" (person) in the entrapment instruction given by the court. His requested instruction eliminated those words.

Of course the phrase approved in *State v. Mullen,* 216 N.W.2d 375, 382 (Iowa 1974), is "normal*ly* law-abiding person", but defendant does not assign this distinction as error. A similar attack was made in *State v. Leonard,* 243 N.W.2d 75, 81 (Iowa 1976), but we refused to consider it because it was unsupported by any authority. In *State v. Reynolds,* supra, 250 N.W.2d at 438, we have adversely disposed of defendant's contention.

■ Defendant contends the instruction should have contained additional language to specifically eliminate defendant's predisposition as a factor to be considered by the jury. The instruction incorporated the objective test of *Mullen.* Failure to include the requested language was not error. See *State v. Pelelo,* 247 N.W.2d 221, 225 (Iowa 1976).

■ Finally, defendant argues trial court erred in limiting the entrapment instruction to the delivery charge and not including the possession charge. We reject this contention because, in our view, defendant did not carry his burden of generating a fact question on the defense of entrapment. *State v. Cooper,* 248 N.W.2d 908, 910 (Iowa 1976); *State v. Tomlinson,* supra, 243 N.W.2d at 553. When viewing the evidence in the light most favorable to

the defendant, *Cooper,* supra, the evidence and all permissible inferences at most disclosed undercover policemen making a buy from defendant upon the assurance they were friendly to his "roommate" and ordinarily bought their drugs from him. This misses by a wide mark evidence of an appeal based on "close personal friendship" which we indicated in *Mullen,* supra, 216 N.W.2d at 383, would generate a jury issue. Instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment. *State v. Leonard,* supra, 243 N.W.2d at 80.

Because on this record trial court was not required to submit any entrapment instruction, failure of the instruction given to include the possession charge could not constitute error.

We have examined all other arguments advanced by defendant in the various divisions of his brief and find them to be without merit. Defendant was accorded a fair trial and judgment of the trial court is affirmed.

AFFIRMED.

All Justices concur except McCORMICK, J., who dissents, joined by MASON and RAWLINGS, JJ.

REES, J., takes no part.

McCORMICK, Justice (dissenting).

I do not agree with the majority holding in Division IV that it was harmless error for the trial court to receive, over defendant's objection, the opinion of a police officer regarding the intent with which defendant possessed marijuana.

Defendant was on trial for possession of marijuana with intent to deliver as well as for delivery of marijuana. His plea of not guilty controverted and put in issue every material allegation of each charge. *State v. Nelson,* 234 N.W.2d 368, 372 (Iowa 1975). The burden was on the State to prove beyond a reasonable doubt every element of the crimes. *State v. Monroe,* 236 N.W.2d 24, 33 (Iowa 1975).

Intent to deliver is an essential element of a charge of possession of a controlled substance with intent to deliver under § 204.401(1), The Code. Permitting a witness to testify that a defendant possessed a drug with intent to deliver is tantamount to permitting the witness to express an opinion on the issue of the defendant's guilt or innocence. It is error to permit such testimony over adequate objection. *State v. Ogg,* 243 N.W.2d 620, 621 (Iowa 1976); *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa 1975).

Although the majority does not decide the issue, I think the objection was adequate to preserve error in the present case. It was neither deficient in form nor untimely.

The form of an objection is sufficient if it alerts the trial court to the principle sought to be invoked. *State v. Nimmo,* 247 N.W.2d 228, 231 (Iowa 1976). The objection here challenged the evidence as "an improper subject of expert testimony." This is the form of objection approved in *State v. Oppedal,* supra, 232 N.W.2d at 524.

Moreover, the timing of the objection here was the same as approved in *Oppedal.* As the answer of the witness demonstrated, it was not clear from the question that the witness should limit himself to a "yes" or "no" answer. Nor was he instructed to do so. Furthermore, the majority's suggestion the objection may have been premature rests on cases where no issue existed as to the propriety of inquiry into the subject matter involved. Here the subject matter is proscribed. Inquiry whether the witness has an opinion on such subject matter is afflicted by the same infirmity as a question seeking to elicit the opinion itself. In these circumstances, the objection was not premature.

Under the principles in *Oppedal* and *Ogg,* the trial court erred in overruling defendant's objection.

It is well settled that a presumption of prejudice arises from an erroneous ruling on evidence. The error is reversible unless this presumption is affirmatively rebutted

by the record. *State v. Mattingly*, 220 N.W.2d 865, 869 (Iowa 1974).

I do not believe the presumption was overcome in the present case. The State's evidence is not "overwhelming" unless the jury chose to believe it. Much of it was contradicted. For example, defendant denied he put the marijuana in individual bags. In addition, on the issue of intent he offered substantial evidence that he was under the influence of alcohol and marijuana on the occasion involved. Whether he had the requisite intent was the fighting issue on the possession charge. The trial court instructed the jury accordingly. The court told the jury to consider the intoxication evidence in determining whether the State proved the intent element. We have recognized the availability of intoxication as a defense when it tends to negate one of the elements which the State must prove to establish guilt. *State v. Booth*, 169 N.W.2d 869, 874 (Iowa 1969). In evaluating the sufficiency of evidence to determine whether a jury issue exists on a matter of defense, we examine the evidence in its light most favorable to the defendant, not the State. *State v. Tomlinson*, 243 N.W.2d 551, 553 (Iowa 1976). The State does not contend nor does the court find the evidence was insufficient on the intoxication issue in this case. However, the effect of the court's holding is to deprive the defendant of this defense as a matter of law. The court has put itself in the place of the jury. In doing so the court has denied the defendant the benefit of the presumption of innocence, the effect of his plea of not guilty, and his right to have the jury decide whether the State met its heavy burden to prove the intent element.

Contrary to the assertion by the majority, I do not believe the record shows he was neither injuriously affected nor denied justice by the trial court's erroneous ruling.

I would reverse and remand for new trial on the possession charge.

MASON and RAWLINGS, JJ., join this dissent.