STATE of Iowa, Appellee,

v.

Dewitt N. BABERS, Appellant.

No. 92–565.

Supreme Court of Iowa.

March 23, 1994.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., William E. Davis, County Atty., and Hugh J. Pries, Asst. County Atty., for appellee.

Considered by CARTER, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Dewitt N. Babers was convicted of delivery of a schedule II simulated controlled substance, cocaine, in violation of Iowa Code section 204.401(1)(c) (1991). On appeal he challenged the court's refusal to permit him to offer impeachment testimony from a previously nondisclosed witness and the court's

failure to instruct the jury upon the defense of entrapment. We transferred the appeal to the court of appeals.

In a divided decision, the court of appeals reversed and remanded for a new trial. The majority opinion found the trial court abused its discretion in excluding the testimony of the defendant's witness under Iowa Rule of Criminal Procedure 12(4). We granted further review and now vacate the decision of the court of appeals and affirm the district court judgment and sentence.

## I. *Background.*

Nineteen-year-old Christine Stalker worked as a confidential informant for the Davenport Police Department during the summer of 1991. She had completed high school and planned to enter a college law enforcement program in the fall. She contacted the police department and volunteered to work as a confidential informant.

On the evening of July 11 Stalker was instructed to drive her car to an area in Davenport known to be frequented by drug dealers. She was equipped with a "wire," a body bug transmitter. Her supervisor was in a second vehicle where he could hear and record the transmissions from the wire. Other police officers were assigned to the area to provide surveillance and they also were equipped to hear the transmissions.

Stalker was instructed to pull up along the curb in front of two bars and ask anyone that walked by, or who approached her, if they had any "rocks." "Rocks" is a street term for crack cocaine. She was also instructed to keep the doors locked in her vehicle, to keep the passenger window partially closed, and not to get out of the vehicle.

At approximately 10:30 p.m. Stalker pulled up along the curb near the front of the bar. She talked to a couple of people before Babers approached and had a conversation with her. She asked him if he had any rocks for sale. Babers then asked her if she was a police officer or if she had a wire on; she said no. He asked her to show him she was not wearing a wire, so she lifted her shirt. He then handed her rocks, some of which were wrapped in pink plastic, and said he wanted thirty dollars. Stalker told him thirty dollars was too much, but she paid him the amount requested. She then pulled away from the curb, met her supervisor, and delivered the rocks.

The six rocks Babers sold to Stalker were tested by the criminology lab. They were in fact, rocks, not crack cocaine. Babers was charged by trial information with delivery of a simulated controlled substance. *See* Iowa Code § 204.101(27) (defining simulated controlled substance).

Prior to trial Babers deposed Stalker and other witnesses listed by the State on the trial information. He also gave notice of his intent to rely upon the defense of entrapment. After jury selection, but before opening statements, the State alerted the court that it had a tape of the conversation between Stalker and Babers. The court listened to the tape in the presence of the prosecuting attorney, Babers, and his attorney. The tape was understandable. The court then ordered that the State could not use the tape as a part of its case-in-chief, but could use it for impeachment purposes.

The case proceeded to jury trial. The State called a property and evidence police officer to mark and identify exhibits including the rocks, the lab report, and the cassette tape. Stalker, her supervisor, and the commander of the street crimes vice narcotic unit also testified at trial. During cross-examination, Babers' attorney used the testimony given during the depositions to impeach the State's witnesses.

After the State had rested, Babers' counsel requested the court submit an instruction on entrapment. The court refused the request. Counsel for the defendant then advised the court and the prosecutor that he had an undisclosed witness, Max Ray, whose testimony would be used strictly to impeach Stalker's credibility. The court ruled that without notice to the State the witness could not testify. The defendant rested his case without calling any witnesses. The court submitted the case to the jury without instructions on the defense of entrapment. The jury returned a guilty verdict. The court then entered a judgment upon the verdict and sentenced Babers to serve a term

not to exceed ten years and to pay a fine of $1000, restitution, attorney fees, and costs.

## II. *Exclusion of Defense Witness.*

Babers challenges the court's order excluding the testimony of defense witness Ray. Iowa Rule of Criminal Procedure 12 imposes a notice requirement on a defendant who deposes a State witness. In a criminal case the defendant may depose all witnesses listed by the State on the indictment or trial information. Iowa R.Crim.P. 12(1). At or before the taking of a deposition, the defendant must file a written list of the names and addresses of all witnesses expected to be called, except the defendant and rebuttal witnesses. Iowa R.Crim.P. 12(3). The defendant has a continuing duty to promptly disclose additional defense witnesses. *Id.*

In 1981 we held the preclusion of a defense witness's testimony was not an authorized sanction for noncompliance with rule 12(3). *State v. Marchellino,* 304 N.W.2d 252, 257 (Iowa 1981). Rule 12 was amended in 1982. 1982 Iowa Acts ch. 1269. The amended rule provides:

> *Failure to comply.* If the defendant has taken depositions under section 1 of this rule and does not disclose to the prosecuting attorney all of the defense witnesses (except the defendant and surrebuttal witnesses) at least nine days before trial, the court may order the defendant to permit the discovery of such witnesses, grant a continuance, or enter such other order as it deems just under the circumstances. It may, if it finds that no less severe remedy is adequate to protect the state from undue prejudice, order the exclusion of the testimony of any such witnesses.

Iowa R.Crim.P. 12(4).

The court of appeals found the rule required the court to make a specific finding "that no less severe remedy is adequate to protect the State from undue prejudice" prior to excluding the testimony of the nondisclosed witness. We disagree. If the rule required a specific finding on the record, the rule would have so provided. *See, e.g.,* Iowa R.Crim.P. 16(1) (requiring waiver of jury trial "on the record"). Although it would be a good practice for the trial court to make on the record findings, rule 12(4) does not require the court to make a specific finding. Under the rule, the court may exercise its discretion in fashioning an appropriate sanction under the circumstances.

We review the record to determine if the court abused its discretion. The sanctions under rule 12(4) are discretionary and will be reversed only if the trial court abuses its discretion. *See State v. Brown,* 397 N.W.2d 689, 698 (Iowa 1986). An abuse of discretion will not generally be found unless the party whose rights have been violated suffered prejudice. *State v. Thompkins,* 318 N.W.2d 194, 198 (Iowa 1982). In making its ruling, the court considered that (1) the proposed testimony was upon a rather minor matter and was somewhat cumulative; (2) the State had rested its case before being advised of the witness; (3) the prosecuting attorney had no opportunity to check the background of the witness or to determine if the witness had any separate motive for his testimony; (4) the defendant was aware of the witness four days before the witness's name was provided to the State; and (5) the defendant's witness was called solely for impeachment purposes.

Defendant's proposed witness would testify that Stalker had made defamatory remarks about Babers, that she would be given priority consideration as a candidate for the police department, and that the Davenport police had fixed a traffic ticket for her. We fail to find Babers' substantial rights were prejudiced by the exclusion of the proposed witness. *See State v. Froning,* 328 N.W.2d 333, 335–36 (Iowa 1982). It was not an abuse of discretion to exclude the testimony of defendant's witness under the circumstances.

## III. *Entrapment.*

Babers challenges the court's refusal to give an entrapment instruction. The court rejected the requested instruction because Babers failed to generate a jury question on the entrapment defense.

Ordinarily, the court must instruct the jury on all material issues raised by the evidence. *State v. Broughton,* 425 N.W.2d

48, 51 (Iowa 1988). To warrant submission of a defense to the jury, however, the defendant must produce substantial evidence from any source to support the theory. *Id.*; *State v. Lucas*, 368 N.W.2d 124, 127 (Iowa 1985). "If there is such substantial evidence, the district court has a duty to give a requested instruction on the defense." *State v. Dunson*, 433 N.W.2d 676, 677 (Iowa 1988).

Entrapment may occur "when a law enforcement agent induces the commission of the offense, using persuasion or other means likely to cause law-abiding persons to commit it." *State v. Tomlinson*, 243 N.W.2d 551, 553 (Iowa 1976); *see also State v. Peterson*, 490 N.W.2d 53, 55 (Iowa 1992); 1 Iowa Criminal Jury Instructions 200.17 (1988). Examples of prohibited activity may "include extreme pleas of desperate illness, appeals based primarily on sympathy, pity, or close personal friendship, and offers of inordinate sums of money." *State v. Mullen*, 216 N.W.2d 375, 383 (Iowa 1974). *See generally State v. Cooper*, 248 N.W.2d 908 (Iowa 1976); *State v. Baumann*, 236 N.W.2d 361 (Iowa 1975).

We have stated that "merely providing the opportunity or the facilities for the commission of a crime does not constitute entrapment." *Mullen*, 216 N.W.2d at 381. Thus, entrapment must involve the use of excessive incitement, urging, persuasion, or temptation by law enforcement agents.

We use an objective test for the defense of entrapment. *Tomlinson*, 243 N.W.2d at 553. The defendant bears the burden to generate a fact issue on this defense. *Id.* To determine the sufficiency of the evidence we consider the transactions between the government agent and the defendant and the agent's conduct. *Id.* at 554–55. We may determine whether a defendant has established a defense of entrapment "as a matter of law when there is no dispute as to the facts or the inferences to be drawn...." *Id.* at 553. This is such a case.

Here, Babers urges he was induced to make the sale because Stalker initiated the transaction and she misrepresented that she did not work for the police. He also insists that a jury question was generated because the substance he sold was not crack cocaine but real rocks, and that it was reasonable not to turn down an easy thirty dollars.

"We have upheld the right of the State to engage in artifice and strategem to apprehend those engaged in criminal activity." *Id.* at 554. Viewing the events in the light most favorable to Babers, we find that mere deceit along with an offer to buy illegal drugs is not the kind of inducement which establishes entrapment. *See, e.g., United States v. Santiago–Godinez*, 12 F.3d 722 (7th Cir.1993). We can clearly infer from the circumstances surrounding the transaction that Babers knew Stalker did not want to buy plain rocks. The gist of the offense of delivery of a simulated controlled substance is "knowing representation of a substance to be a controlled substance and delivery of a noncontrolled substance...." *State v. Freeman*, 450 N.W.2d 826, 827 (Iowa 1990); *see also State v. Henderson*, 478 N.W.2d 626, 630 (Iowa 1991). Moreover, Babers had rocks enclosed in plastic in his possession at the time he approached Stalker. The price for the rocks was set by Babers, not Stalker. We conclude no reasonable person could infer from the evidence that the State used the kind of extraordinary inducement that is necessary for entrapment. The court did not err in refusing to instruct on the defense of entrapment.

**Decision of court of appeals vacated; district court judgment affirmed.**