# IN THE COURT OF APPEALS OF IOWA

No. 22-1468
Filed January 24, 2024

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CHAD MICHAEL VICE,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, Michael J. Schilling, Judge.

A defendant appeals his conviction for delivery of five grams or less of methamphetamine. **AFFIRMED.**

Christopher Kragnes Sr., Des Moines (until withdrawal), and Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

"Trust no one, even a close friend." This is the lesson that Chad Vice says he learned after his best friend became a confidential informant and set up a controlled buy. After two years of continuances, the district court found Vice guilty of delivery of five grams or less of methamphetamine following a bench trial. Vice appeals, claiming (1) the "State failed to disprove entrapment beyond a reasonable doubt" because the "confidential informant was a close personal friend of" his and (2) the district court "abused its discretion and violated [his] due process rights when finding good cause to extend the proceedings under COVID-19 Iowa Supreme Court orders." We affirm.

I.      *Entrapment*

Vice's first claim is a challenge to the sufficiency of the evidence, which we review for correction of errors at law. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). We give high deference to the verdict and "view the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (citation omitted).

In that light, the record shows that in 2019, a woman named L.G. began working as a confidential informant for the Lee County Narcotics Task Force. She was given the chance to "work off" the felony charges she was facing by doing controlled buys. L.G. explained: "[T]hey want [you to] do controlled buys for drugs on people, people that I knew or that, you know, that they would be interested in. And, you know, I told him a few people I could do." One of those people was her friend, Chad Vice.

L.G. testified that she met Vice "through a mutual friend. We weren't close friends, but we were—became closer friends, you know just—You know, we trusted each other, you know." They knew each other for "a year, maybe two" before the controlled buy, according to Vice. He "considered her to be the best friend [he] had." They used methamphetamine together and talked daily about "life in general." L.G. let Vice use her car, loaned him money, and picked him up from jail after he was arrested on separate charges. He trusted her enough to ask her opinion about a plea deal for those charges and proposed that she move into his house to help take care of his grandma if he went to prison.[1] Vice described L.G. at trial as "an all-out," true friend.

On April 8, L.G. contacted her primary handler on the task force, Deputy Robert Juarez, to let him know that she could buy drugs from Vice that evening. At trial, L.G. could not remember how that pre-buy discussion with Vice came about: "I'm not sure if I asked [Vice] if he could help me out or maybe he hit me up first. It's been so long, I don't remember the whole conversation. But, I mean, [Vice] said he could help me out," which she testified meant that he could get her methamphetamine. Later that day, Deputy Juarez met with L.G. to set up the buy. She told the task force that she could get "a ball, which is 3.5 grams" of methamphetamine from Vice for $100. The task force gave L.G. the money and a recording device. L.G. then drove to Vice's residence. She arrived there at 6:57 p.m. and left after completing the controlled buy at 7:45 p.m.

---

[1] Vice flip-flopped several times in his testimony about whether it was his mother or his grandmother that L.G. might live with.

A grainy video from the recording device L.G. was given was admitted as evidence at trial. When it starts, L.G. can be heard saying that she doesn't want to know who the methamphetamine is coming from. Vice asks L.G. if they could split the ball she wanted to obtain, but L.G. replies that she only has $100. They then seem to agree that Vice will take some of her ball. Vice leaves the room for about three minutes. When he returns, Vice hands L.G. a bag with a white crystalline substance. He leaves again and comes back with a scale. They weigh the product and separate it. Vice packages L.G.'s share, ties it off, and hands it to her. L.G. testified that she gave Vice the $100, although she couldn't remember when. After the buy, L.G. drove Vice to a nearby friend's house and then met up with members of the task force. The drugs she gave them tested positive for methamphetamine and weighed 4.54 grams.

At his trial for delivery of five grams or less of methamphetamine,[2] Vice testified that he was entrapped. He explained that he only obtained the methamphetamine because of his friendship with L.G. and desire to help her out. Vice testified that "I don't sell methamphetamine; I use it." In its written verdict, the district court "[a]ssum[ed] that Vice raised a fact issue on the defense of entrapment" but then concluded "that the State of Iowa established by proof beyond a reasonable doubt that [L.G.] did not entrap Vice." *See State v. Tomlinson*, 243 N.W.2d 551, 553 (Iowa 1976) (explaining this burden). On appeal, Vice claims the State failed to meet its burden. We conclude otherwise.

---

[2] This was charged as a second or subsequent offense with a habitual-offender enhancement.

"We use an objective test to determine if there has been entrapment." *State v. Davis*, No. 12-0172, 2013 WL 750457, at *2 (Iowa Ct. App. Feb. 27, 2013). "[E]ntrapment occurs when a law enforcement agent induces the commission of the offense, using persuasion or other means likely to cause normally law-abiding persons to commit it. Conduct merely affording a person an opportunity to commit an offense is not entrapment." *Tomlinson*, 243 N.W.2d at 553. "[E]ntrapment must involve the use of excessive incitement, urging, persuasion, or temptation by law enforcement agents."[3] *State v. Babers*, 514 N.W.2d 79, 83 (Iowa 1994). Such excessive inducements might include "extreme pleas of desperate illness"; "appeals based on sympathy, pity, or close personal friendship"; or "offers of inordinate sums of money." *State v. Mullen*, 216 N.W.2d 375, 383 (Iowa 1974).

All we have here is the friendship between L.G. and Vice. At most, the evidence shows that L.G. contacted Vice and asked if he could get her methamphetamine, and Vice agreed. While Vice says L.G. used "extraordinary inducement . . . to help her obtain methamphetamine," he does not identify what that extraordinary inducement was beyond their friendship. There was no evidence that Vice required any "incitement, urging, persuasion, or temptation" by L.G. to commit the crime, let alone to an excessive extent. *See Babers*, 514 N.W.2d at 83. And though they were friends, L.G. did not bait Vice's commission

---

[3] L.G., acting as a confidential informant, qualifies as a law enforcement agent for entrapment purposes. *See State v. Gibb*, 303 N.W.2d 673, 686 (Iowa 1981) ("[W]hen the government stakes a third party with money as a free agent to buy drugs, it cannot disclaim the third party's conduct in the transaction."); *State v. Trost*, 244 N.W.2d 556, 558 (Iowa 1976) ("If law enforcement officers use an individual to help them arrange the commission of a crime by another person, the officers cannot disassociate themselves from the inducement such individual offers in the course of his efforts for the officers.").

of the crime with any extreme appeal relating to their friendship. *See Mullen*, 216 N.W.2d at 383. She just asked him to help her get methamphetamine, and he obliged. L.G. did nothing more than afford Vice the opportunity to commit the crime, which is not entrapment. *Tomlinson*, 243 N.W.2d at 553. We accordingly conclude that the State met its burden to disprove entrapment.

## II.     Motion to Dismiss

The morning of the trial on January 25, 2022, Vice moved to dismiss the case for violating the one-year speedy-trial deadline in Iowa Rule of Criminal Procedure 2.33(2)(c). He had been charged by trial information in May 2019. The next month, Vice filed a written arraignment, in which he demanded his ninety-day speedy-trial right under rule 2.33(2)(b). A trial was set for early August but, in July, Vice waived his ninety-day speedy-trial right and asked to continue the trial. After a couple more continuances, and Vice's jury-trial waiver, the trial was reset for April 22, 2020. Then the COVID-19 pandemic hit. On April 8, the court ordered that the bench trial be rescheduled due to Iowa Supreme Court orders in response to the pandemic.[4] In a separate order entered on April 21, consistent with the then-prevailing supreme court order, the district court stated "the one year deadline in

---

[4] Just a few days prior, on April 2, the supreme court ordered: "Any criminal nonjury trial that is scheduled to begin before June 1, 2020[,] shall be continued and reset to a date no earlier than June 1." Iowa Sup. Ct. Supervisory Order, *In re Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* ¶ 6 (Apr. 2, 2020), *available at* https://www.iowacourts.gov/collections/485/files/1 076/embedDocument/. The order also repeated the supreme court's conclusion that the pandemic constituted good cause for trial postponements, so the ninety-day speedy-trial deadline in rule 2.33(2)(b) would be expanded to one-hundred-twenty days and would restart on July 13, and the one-year speedy-trial deadline in rule 2.33(2)(c) would restart on April 20. *Id.* ¶ 8.

rule 2.33(2)(c) shall commence from April 20, 2020." After several more continuances, the trial was ultimately held on January 25, 2022.

In support of his oral motion to dismiss, Vice argued his one-year speedy-trial right was violated because the district court's April 21, 2020 order stated his right to trial within one year would commence on April 20. Vice claimed that the district court's order trumped the supreme court's later orders extending the deadline. The last of those orders stated that "[f]or any criminal case in which an indictment or information has been or is filed prior to February 1, 2021, the one-year deadline in rule 2.33(2)(c) shall commence from February 1, 2021 or the date of arraignment, whichever is later." Iowa Sup. Ct. Supervisory Order, *In re Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* ¶ 3 (Nov. 10, 2020), *available at* https://www.iowacourts.gov/collections/583/files/1243/embedDocument/. The order also noted that, "[i]n addition to the speedy trial extensions set forth in paragraph 3, above, the court finds the COVID-19 pandemic constitutes good cause within the meaning of Iowa R. Crim. P. 2.33 for any additional continuances or extensions of time necessitated by this order." *Id.* ¶ 4.

After taking the motion under advisement, the district court denied it in the written verdict. The court found the November 2020 supervisory order controlled, and the pandemic provided good cause for the delay. On appeal, Vice claims this was an abuse of the court's discretion.[5] We disagree. *See State v. Watson*, 970

---

[5] Vice also claims the court "violated [his] due process rights when finding good cause to extend proceedings under COVID-19 Iowa Supreme Court orders." While the State doesn't challenge error preservation on that claim, we conclude it was not preserved because Vice did not raise a due process challenge when he made his oral motion to dismiss the morning of trial. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309 , 322 (Iowa 2013) ("Even issues implicating constitutional rights must

N.W.2d 302, 307 (Iowa 2022) (reviewing rulings on motion to dismiss implicating the good-cause requirement in Iowa Rule of Criminal Procedure 2.33(2) for an abuse of discretion).

"It is the public policy of the State of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." Iowa R. Crim. P. 2.33(2). For a defendant's one-year speedy-trial right, "[a]ll criminal cases must be brought to trial within one year after the defendant's initial arraignment . . . unless an extension is granted by the court, upon a showing of good cause." *Id.* r. 2.33(2)(c). As detailed above, the supreme court's November 2020 supervisory order provided that, for all cases with a trial information predating February 1, 2021—which included Vice's—"the one-year deadline in rule 2.33(2)(c) shall commence from February 1, 2021 or the date of arraignment, whichever is later." So the State had one year from that date to bring Vice to trial, and it did. The supreme court repeated in multiple supervisory orders that the pandemic constituted good cause under rule 2.33 for any trial postponements. The district court followed that guidance in its ruling denying the motion to dismiss. We accordingly find no abuse of discretion.

**AFFIRMED.**

---

be presented to and ruled upon by the district court in order to preserve error for appeal."). He did raise a due process claim in a pro se motion to dismiss roughly six months after the court issued its verdict but shortly before sentencing. The court, however, declined to consider the motion because it was filed pro se while Vice was represented by counsel. *See* Iowa Code § 814.6A (2022).